# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**DAVID T.A. MATTINGLY**
Mattingly Legal, LLC
Lafayette, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**BRIAN REITZ**
Deputy Attorney General
Indianapolis, Indiana

**FILED**
May 29 2014, 10:42 am

**CLERK**
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| FLOYD WILLIAM TREECE, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 79A05-1309-CR-458 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE TIPPECANOE SUPERIOR COURT
The Honorable Randy J. Williams, Judge
Cause No. 79D01-1007-FB-15

**May 29, 2014**

**OPINION- FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

Floyd William Treece was convicted of possession of methamphetamine and possession of an illegal drug lab and admitted to being a habitual offender. He was sentenced to an aggregate term of fourteen years, which included a term of commitment to the Department of Correction ("DOC"), followed by time in a community corrections program, and the remainder suspended to probation. Before the scheduled release date from his DOC commitment, he requested and was granted assignment to a community transition program ("CTP") for the last 120 days of his DOC commitment. He was assigned to the CTP at Tippecanoe County Community Corrections ("TCCC").

During his time in the CTP, Treece discovered another person sitting in his chair and kicked him in the face, which was a violation of TCCC's rule against assault and battery. He admitted to the violation, and TCCC removed him from its CTP. When Treece was released from the DOC, he reported to TCCC for the community corrections portion of his sentence. TCCC informed him that he had been rejected from participation in any of its programs as a result of his violent rule violation. The State filed a motion requesting that Treece be committed to the DOC and that his placement in community corrections be revoked, which the trial court granted.

Treece appeals the revocation of his community corrections placement. He argues that the trial court abused its discretion in revoking his community corrections placement because (1) the TCCC did not have the authority to reject his placement in community corrections for a rule violation he committed while assigned to the CTP because the CTP is a

2

DOC program and the DOC is not statutorily authorized to reject an inmate's placement in community corrections as a disciplinary action; and (2) the trial court failed to consider the progress he made toward rehabilitation during his DOC commitment. We conclude that the CTP is a TCCC program and that the statutes governing the DOC's disciplinary actions do not apply to TCCC. Therefore, TCCC had the authority to reject Treece from his placement in community corrections for a violation he committed while in the CTP. We also conclude that the trial court was not required to consider his progress toward rehabilitation when determining whether his rule violation warranted revocation of his community corrections placement. We conclude that he committed an act of violence, and therefore the trial court did not abuse its discretion in revoking his community corrections placement. Therefore, we affirm. We also remand for the trial court to clarify its sentencing order.

**Facts and Procedural History**

Treece pled guilty to class D felony possession of methamphetamine and class C felony possession of an illegal drug lab and admitted to being a habitual substance offender. The trial court sentenced Treece to consecutive terms of three years for possession of methamphetamine, six years for possession of an illegal drug lab, and five years for being a habitual substance offender, for an aggregate term of fourteen years. The trial court ordered Treece to "execute eight (8) years at the [DOC] to include two (2) years with [TCCC] at a level to be determined by Community Corrections." Appellant's App. at 15. The sentencing order also stated that "[Treece's] sentence calls for an executed term of imprisonment of ten years." *Id*. at 17. The trial court ordered that four years be suspended and that Treece be

3

placed on supervised probation for four years. In addition, the sentencing order provided, "[Treece] shall obey all Community Corrections Rules. If he is rejected from Community Corrections, that time will be spent in the Department of Correction." *Id*. at 16.

Treece was incarcerated at the Westville Correctional Facility. By letter dated February 1, 2013, he informed the trial court that his release date was July 25, 2013, and requested assignment to a CTP for the last 120 days of his commitment to the DOC. After the trial court received a recommendation from the TCCC CTP recommendation panel that Treece be assigned to the CTP, the court granted Treece's request and ordered the DOC to assign him to the CTP. *Id*. at 28. Treece was transported to TCCC to serve in its CTP until July 25, 2013, at which time he was to begin serving the two-year portion of his sentence with TCCC pursuant to the sentencing order.

On June 22, 2013, Treece was serving in the CTP at TCCC when he returned to the TCCC day room and found that someone was sitting in a seat that he had formerly occupied. Tr. at 10. A still from the video recording of the room in which the incident occurred shows over sixty seats, almost all of which were unoccupied. Appellant's App. at 33. Instead of taking one of the other seats, Treece kicked the person in the face. A TCCC hearing officer conducted a hearing, at which Treece admitted to kicking the inmate in the face. The hearing officer concluded that Treece violated TCCC Rule 212 regarding assault and battery. *Id*. at 32. As a consequence of his rule violation, TCCC removed him from its CTP.

On July 9, 2013, the trial court received notice from TCCC that it was rejecting Treece from the community corrections portion of his sentence due to fighting while he was in its

4

CTP. *Id.* at 29. TCCC explained that it had a "zero tolerance for participants that fight" and that if "a participant fights while on [TCCC] they will never be accepted for placement again." *Id.*

On July 25, 2013, Treece was released from commitment to the DOC. He reported to TCCC to serve his two years in community corrections pursuant to the sentencing order, at which time he was informed that TCCC was rejecting his placement in its program. On July 26, 2013, the State filed a motion to commit Treece to the DOC, asking the court to revoke his community corrections placement and remand him to the custody of the DOC for the two years that he was supposed to serve in community corrections. At the hearing on the State's motion, Treece argued that TCCC did not have the authority to reject him from its program because at the time of his rule violation he was still in the CTP, which, he argued, was a DOC program. The trial court concluded that TCCC could reject Treece based upon his rule violation while assigned to its CTP and granted the State's motion. Treece appeals.

### Discussion and Decision

### Standard of Review

Treece presents two arguments that the trial court abused its discretion in revoking his community corrections placement. Before addressing his arguments on the merits, we observe,

> Both probation and community corrections programs serve as alternatives to commitment to the DOC, and both are made at the sole discretion of the trial court. A defendant is not entitled to serve a sentence in either probation or a community corrections program. Rather, placement in either is a matter of grace and a conditional liberty that is a favor, not a right.

5

The standard of review of an appeal from the revocation of a community corrections placement mirrors that for revocation of probation. That is, a revocation of community corrections placement hearing is civil in nature, and the State need only prove the alleged violations by a preponderance of the evidence.

*McQueen v. State*, 862 N.E.2d 1237, 1242 (Ind. Ct. App. 2007) (citations and quotation marks omitted).

Probation revocation is a two-step process. First, the court must make a factual determination that a violation of a condition of probation actually has occurred. If a violation is proven, then the trial court must determine if the violation warrants revocation of the probation. Indiana has codified the due process requirements at Ind. Code § 35-38-2-3 by requiring that an evidentiary hearing be held on the revocation and providing for confrontation and cross-examination of witnesses and representation by counsel. When a probationer admits to the violations, the procedural due process safeguards and an evidentiary hearing are not necessary. Instead, the court can proceed to the second step of the inquiry and determine whether the violation warrants revocation. In making the determination of whether the violation warrants revocation, the probationer must be given an opportunity to present evidence that explains and mitigates [his] violation.

*Sanders v. State*, 825 N.E.2d 952, 955 (Ind. Ct. App. 2005) (citations omitted), *trans. denied*.

### Section 1 – TCCC's Authority to Reject Treece

Treece's first argument is that the trial court erred in concluding that TCCC had the authority to reject him from the community corrections portion of his sentence based on a rule violation he committed while still committed to the DOC. The State does not directly address TCCC's authority to reject an inmate but argues that the trial court's discretion to revoke an offender's placement in a community corrections program may be exercised before the offender's placement commences, citing *Ashba v. State* 570 N.E.2d 937 (Ind. Ct. App. 1991), *cert. denied* (1992) and *Million v. State*, 646 N.E.2d 998 (Ind. Ct. App. 1995).

6

In *Ashba*, this Court held that the trial court could properly revoke Ashba's probation before his probationary period began for an offense that he committed while he was on parole from the DOC. 570 N.E.2d at 940. The court explained that the terms of Ashba's probation attached to his suspended sentence from the moment that the sentence was imposed. *Id.*; *see also Baker v. State*, 894 N.E.2d 594, 596-98 (Ind. Ct. App. 2008) (holding that probation may be revoked for commission of crime while serving executed portion of sentence). In *Million*, this Court held that the trial court did not abuse its discretion in revoking Million's placement in a community corrections program before that placement began for conduct that occurred while he was in work release for a prior conviction. 646 N.E.2d at 1002; *see also Toomey v. State*, 887 N.E.2d 122, 124-25 (Ind. Ct. App. 2008) (holding that trial court did not lack authority to revoke home detention upon defendant's violation of conditions of work release).

Treece acknowledges *Ashba* and *Million* but argues that they are inapposite because neither case involved a CTP. He argues that TCCC had no authority to reject him because (1) a CTP is a DOC program, (2) permissible DOC disciplinary actions are provided for by statute, and (3) such disciplinary actions do not include rejection from a community corrections program.

To the extent that our analysis of Treece's argument relies on statutory interpretation, we observe that

> [b]ecause it presents a question of law, we review a matter of statutory interpretation using a de novo standard. When interpreting a statute, our goal is to determine and give effect to the legislature's intent in promulgating it. Thus, we begin by examining the language of the statute, presuming that the words were selected to express their common and ordinary meanings. Where the statute is unambiguous, we accord each word and phrase its plain, ordinary,

7

and usual meaning, without having to resort to rules of construction to decipher meanings.

*Leedy v. State*, 998 N.E.2d 307, 309-10 (Ind. Ct. App. 2013) (citations omitted), *trans. denied* (2014).

Treece's argument begins with the assertion that a "CTP is a DOC program." Appellant's Br. at 6. In support, he cites Indiana Code Chapter 11-10-11.5, which governs the assignment of offenders to CTPs.[1] Indiana Code Section 11-10-11.5-1 states in relevant part, "This chapter applies to a person: (1) who is committed to the [DOC] under IC 35-50 for one (1) or more felonies." Section 11-10-11.5-1 merely states that the provisions in that chapter for assignment to a CTP apply to persons who are committed to the DOC. The fact that a CTP is for an offender committed to the DOC does not mean that a CTP is a DOC program.

Treece's assertion that a CTP is a DOC program completely ignores the numerous statutory provisions that indicate that a CTP is operated by a community corrections program. CTP is defined by Indiana Code Section 11-8-1-5.5 as follows:

> "Community transition program" means assignment of a person committed to the [DOC] to:
>
> > (1) *a community corrections program*; or
> >
> > (2) in a county or combination of counties that do not have a community corrections program, a program of supervision by the probation department of a court;

---

[1] For example, Indiana Code Chapter 11-10-11.5 provides for the commencement and duration of the CTP (Sections 5, 6, and 9), the DOC's duties such as notification of a defendant's eligibility to the trial court and the prosecutor (Sections 2 and 4), transportation of the offender (Sections 7 and 8), and the collection and distribution of the offender's earnings while in the CTP (Section 12).

for a period after a person's community transition program commencement date until the person completes the person's fixed term of imprisonment, less the credit time the person has earned with respect to the term.

(Emphasis added.)

Community corrections program means

a community based program that provides preventive services, services to offenders, services to persons charged with a crime or an act of delinquency, services to persons diverted from the criminal or delinquency process, *services to persons sentenced to imprisonment*, or services to victims of crime or delinquency, and is operated under a community corrections plan of a county and funded at least in part by the state subsidy provided in IC 11-12-2.

Ind. Code §11-12-1-1 (emphasis added). Counties are required to establish CTPs as part of their community corrections programs. Ind. Code § 11-12-10-1. Also, a county may establish a community corrections advisory board to operate its community corrections programs, which may be operated for any of the following:

(1) The prevention of crime or delinquency.

(2) Persons sentenced to imprisonment in a county or local penal facility other than a state owned or operated facility.

(3) *Committed offenders*.

(4) Persons ordered to participate in community corrections programs as a condition of probation.

Ind. Code § 11-12-1-2 (emphasis added). Further, a CTP may include any of the services provided by a community corrections program: "A community transition program for a county must provide services that improve an offender's chances of making a successful transition from commitment to employment and participation in the community without the

9

commission of further crimes.  The program may include any of the services described in IC

11-12-1-2.5[2].”  Ind. Code § 11-12-10-2.

While assigned to a CTP, “a person must comply with the rules concerning the

conduct of persons in the [CTP] … *that are adopted by the community corrections advisory*

*board establishing the program*” and “any conditions established by the sentencing court for

the person.”  Ind. Code § 11-10-11.5-11(a) (emphasis added).  If a person violates a CTP rule

or any condition established by the sentencing court, the CTP is authorized to take the

following actions:

> The [CTP], following a hearing and upon a finding of probable cause that the
> offender has failed to comply with a rule or condition under section 11 of this
> chapter, may:
>
>> (1) request a court to issue a warrant ordering the department to
>> immediately:
>>
>>> (A) return the offender to the [DOC]; or
>>>
>>> (B) reassign the offender to a program or facility administered
>>> by the [DOC]; or
>>
>> (2) take disciplinary action against an offender who violates rules of
>> conduct.  Disciplinary action under this subdivision may include the
>> loss of earned credit time under IC 35-50-6-5.

---

2  Indiana Code Section 11-12-1-2.5 lists services that community corrections programs may include: residential or work release programs; house arrest, home detention, and electronic monitoring programs; community restitution or service programs; victim-offender reconciliation programs; jail services programs; jail work crews; community work crews; juvenile detention alternative programs; day reporting programs; faith based programs; and other community corrections programs approved by the DOC.  This section has been amended, effective July 1, 2014, to read, “The community corrections programs described in section 2 of this chapter shall use evidence based services, programs, and practices that reduce the risk for recidivism among person who participate in the community corrections programs.”  Pub. Law 158-2014.  However, Indiana Code Section 11-12-10-2 has not been amended and continues to permit CTPs to include any of the services permitted by community corrections programs.

Ind. Code § 11-10-11.5-11.5(b). This statutory framework shows that a CTP is not a DOC program but a community corrections program provided for persons committed to the DOC. Further, community corrections programs set their own rules and policies to which an offender is subject.

Here, when Treece was assigned to a CTP he was assigned to TCCC, which operated the CTP. Treece violated TCCC rules. TCCC took the action of removing Treece from its CTP, as it is authorized to do. *See id*. TCCC also has a policy to reject any person who commits an act of violence while participating in one of its programs from any further participation in its programs. It is of no moment that Treece was still committed to the DOC when he violated TCCC rules. Treece's commitment to the DOC does not render TCCC powerless from enforcing its rules and policies.

Treece argues that the CTP is subject to the disciplinary rules promulgated under Indiana Code Chapter 11-11-5 based on Section 11-11-5-1(a), which provides, "This chapter applies to persons: (1) placed in a community corrections program; or assigned to a [CTP]." Although Chapter 11-11-5 applies to offenders who are assigned to a CTP, we disagree with Treece that the disciplinary rules in Sections 11-11-5-3 and -4 limit the authority of CTPs to impose their own disciplinary measures on persons in their programs who violate their rules. Section 11-11-5-3 lists permissible disciplinary actions and states, "*The [DOC]* may impose any of the following as disciplinary action." (Emphasis added.) Likewise, Section 11-11-5-4 lists impermissible disciplinary actions and provides, "*The [DOC]* may not impose the following as disciplinary action." (Emphasis added.) We observe that "[i]t is just as

11

important to recognize what the statute does not say as it is to recognize what it does say."
*Dugan v. State*, 793 N.E.2d 1034, 1036 (Ind. 2003). We conclude that Sections 11-11-5-3 and -4 specifically limit the actions that *the DOC may take* against offenders while they are placed in a community corrections program or assigned to a CTP. Sections 11-11-5-3 and -4 control the DOC's disciplinary actions with regard to offenders in a CTP, but they do not control or limit a CTP's disciplinary actions with regard to offenders in CTP.

A CTP's authority to discipline offenders when they are assigned to a CTP is granted in Indiana Code Section 11-10-11.5-11.5(b), which provides that a CTP may remove an offender from its program upon a rule violation or take "disciplinary action" against the offender. It does not say that a CTP may take disciplinary action under Indiana Code Section 11-11-5-3. If the legislature wanted CTPs to take only the disciplinary actions listed in Section 11-11-5-3, it could have cited to that section. We conclude that the TCCC had the authority to reject Treece from its community corrections programs after he violated its rules while assigned to its CTP.

## Section 2 – Trial Court's Failure to Consider Treece's Progress

Treece also argues that even if TCCC had the authority to reject him from community corrections for his CTP rule violation, the trial court abused its discretion in revoking his placement by failing to account for his achievements while committed to the DOC. Specifically, he argues that he completed his GED and the Clean Lifestyle is Freedom Forever (CLIFF) program, had obtained fulltime employment, and was "seemingly being rehabilitated." Appellant's Br. at 10. Initially, we observe that trial courts are not required to

12

balance "aggravating or mitigating circumstances when imposing sentence in a probation revocation proceeding." *Mitchell v. State*, 619 N.E.2d 961, 964 (Ind. Ct. App. 1993), *overruled in part by Patterson v. State*, 669 N.E.2d 220, 223 n.2 (Ind. Ct. App. 1995) (holding that in a probation revocation proceeding, probationer's mental health should be considered).[3] In addition, violation of a single condition of placement is sufficient to revoke placement. *Gosha v. State*, 873 N.E.2d 660, 663 (Ind. Ct. App. 2007). Here, Treece did not merely break a rule, he engaged in an act of violence after minimal provocation. Someone was sitting in a seat that he had previously sat in, and rather than taking one of the many other unoccupied seats, he kicked the person in the face. We conclude that the trial court did not abuse its discretion in revoking Treece's placement in community corrections.

### Section 3 – Remand for Sentencing Clarification

Treece received an aggregate sentence of fourteen years. The sentencing order states that Treece "shall execute eight (8) years at the [DOC] to include two (2) years with [TCCC] at a level to be determined by Community Corrections" and "that four (4) years of the sentences of imprisonment should be, and the same hereby are, suspended and [Treece] placed on supervised probation for four (4) years." Appellant's App. at 15. Do we interpret this order to mean eight years at the DOC plus two years with TCCC plus four years

---

[3] This is not to be confused with the probationer right to "an opportunity to present evidence that explains and mitigates [his] violation." *See Sanders*, 825 N.E.2d at 955.

suspended for a total sentence of fourteen years?[4] Based on Treece's release date from the DOC of July 25, 2013, and the State's calculation of his time served,[5] it appears that the DOC interpreted the sentencing order to mean that the eight years executed consists of six years at the DOC and two years with TCCC. If that is the case, Treece's sentence will be only twelve years, not fourteen. The sentencing order's paragraph pertaining to the cost of Treece's incarceration stated that "[his] sentence calls for an executed term of imprisonment of ten years." *Id.* at 17. The chronological case summary reads, "[Treece] sentenced to 14 years to execute 10 years." *Id.* at 7. "[I]t is our duty to 'correct sentencing errors, sua sponte, if necessary.'" *Jones v. State*, 775 N.E.2d 322, 331 (Ind. Ct. App. 2002) (quoting *Dickson v. State*, 624 N.E.2d 472, 474 (Ind. Ct. App. 1993)). Accordingly, we remand to the trial court to clarify Treece's sentence.

Affirmed and remanded.

BAKER, J., and BARNES, J., concur.

---

[4] Indiana Code Section 35-38-2.6-3 indicates that if the trial court decides to place a defendant in a community corrections program as an alternative to commitment to the DOC, the trial court should suspend the defendant's sentence. We also observe that the trial court may order participation in community corrections programs as a condition of probation. Ind. Code § 11-12-1-2.

[5] "[Treece] was released from the DOC portion of his executed sentence on July 25, 2013 – eight hundred and five (805) days after sentencing. Assuming [Treece] earned and retained all good time credit available to him in this case, he has completed two thousand one hundred and ninety (2,190) days – *or six years* – of his eight-year executed sentence." Appellant's App. at 30 (emphasis added).

14