## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Steven E. Ripstra
Ripstra Law Office
Jasper, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Tyler G. Banks
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Rhonda J. Mattingly,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

February 16, 2016

Court of Appeals Case No.
63A05-1509-CR-1310

Appeal from the Pike Circuit Court

The Honorable Jeffrey L. Biesterveld, Judge

Trial Court Cause No.
63C01-1409-F5-425

**Najam, Judge.**

# Statement of the Case

Rhonda J. Mattingly appeals the trial court's revocation of her probation and Community Corrections placement, following a dispositional hearing. She raises one issue, namely, whether the trial court abused its discretion in ordering her to serve the balance of her previously suspended sentence.

We affirm.

# Facts and Procedural History

On September 16, 2014, the State charged Mattingly with three criminal offenses relating to controlled substances. Pursuant to a negotiated plea agreement, she pleaded guilty to corrupt business influence, as a Level 5 felony, and she was sentenced to six years with five years suspended to probation. The single executed year was to be served in Community Corrections in a work-release program.

Approximately two-and-one-half months later, Community Corrections filed a notice of Community Corrections violation alleging that Mattingly had tested positive for Alpha-Pyrrolidinopentiophenone ("Alpha-PVP"), an illegal controlled substance known colloquially as "bath salts." Appellant's App. at 46; Tr. at 12, 20. The State subsequently filed a motion to revoke Mattingly's probation based on her possession of, and positive test for the use of, Alpha-PVP.

[5] At a revocation hearing on June 8, Mattingly admitted to the alleged violations, and the trial court accepted her admission. At the subsequent hearing,[1] defense counsel argued for leniency given that Mattingly's criminal history involved only non-violent crimes related to drugs and alcohol and that Mattingly suffered from chronic anxiety disorder, depression, and possible bipolar disorder. Mattingly testified that she used the Alpha-PVP on only one occasion when she was on work release because she was depressed and grieving the death of her best friend. She testified that, because she could not afford to buy her prescribed medications for her mental health problems, she self-medicated with the Alpha-PVP on that one occasion. Mattingly apologized and asked that the court impose a sentence other than prison.

[6] The trial court noted that it considered the Indiana Risk Assessment System (IRAS) section of Mattingly's Presentence Investigation Report, which showed that Mattingly was in the high risk category to reoffend. The court also noted that Mattingly had "a history of criminal delinquent behavior in that she's recently violated . . . probation in this matter." Tr. at 24. The trial court also considered the fact that Mattingly admitted to the probation violation, thus saving the court time and resources. However, the trial court revoked Mattingly's Community Corrections placement and her probation, and it ordered that she serve the balance of her sentence in the Indiana Department of

---

[1] The trial court styled the dispositional hearing as a "Re-Sentencing Hearing." Tr. at 15.

Correction, with a recommendation that she be placed in the Purposeful Incarceration Program. This appeal ensued.

## Discussion and Decision

[7] Mattingly argues that the trial court abused its discretion in revoking her Community Corrections placement and her probation. "Probation [and Community Corrections placement are] a matter of grace left to trial court discretion, not a right to which a criminal defendant is entitled." *Prewitt v. State*, 878 N.E.2d 184, 188 (Ind. 2007); *see also Treece v. State*, 10 N.E.3d 52, 56 (Ind. Ct. App. 2014), *trans. denied*. We review probation violation determinations and sanctions for an abuse of discretion.[2] *Heaton v. State*, 984 N.E.2d 614, 616 (Ind. 2013). "An abuse of discretion occurs where the decision is clearly against the logic and effect of the facts and circumstances, or when the trial court misinterprets the law." *Id*. (citations omitted).

[8] A probation revocation proceeding is a two-step process. *Id*. First, the trial court must determine whether the preponderance of the evidence showed that a probation violation occurred. *Id*.; *see also* Ind. Code § 35-38-2-3 (requiring that an evidentiary hearing be held on revocation of probation and providing for confrontation and cross-examination of witnesses by the probationer).

---

[2] "For purposes of appellate review, we treat a hearing on a petition to revoke a placement in a community corrections program the same as we do a hearing on a petition to revoke probation." *Cox v. State*, 706 N.E.2d 547, 549 (Ind. 1999).

When a probationer admits to violations of the terms of his probation, the procedural safeguards of [I.C. § 35-38-2-3] are unnecessary. Instead, the court can proceed to the second step of the inquiry and determine whether the violation warrants revocation. However, even a probationer who admits the allegations against him must still be given an opportunity to offer mitigating evidence suggesting that the violation does not warrant revocation.

*Woods v. State*, 892 N.E.2d 637, 640 (Ind. 2008) (citations omitted).

[9] In the second step of the process, the trial court must determine whether the probation violation warrants revocation of probation or some lesser sanction. *Heaton*, 984 N.E.2d at 616 ("[I]f a violation is found, then the trial court must determine the appropriate sanctions for the violation."); *Patterson v. State*, 659 N.E.2d 220, 222-23 (Ind. Ct. App. 1995) ("A court has several dispositional options in a revocation proceeding."). Indiana Code Section 35-38-2-3(h) provides:

If the court finds that the person has violated a condition at any time before termination of the period, and the petition to revoke is filed within the probationary period, the court may impose one (1) or more of the following sanctions:

(1) Continue the person on probation, with or without modifying or enlarging the conditions.

(2) Extend the person's probationary period for not more than one (1) year beyond the original probationary period.

> (3) Order execution of all or part of the sentence that was
> suspended at the time of initial sentencing.

Our supreme court has held that this statute "permits judges to sentence offenders using any one of or any combination of the enumerated powers." *Prewitt v. State*, 878 N.E.2d at 187.

[10] A single violation of a condition of probation is sufficient to permit the trial court to revoke probation. *Pierce v. State*, No. 28A05-1502-CR-57, 2015 WL 5589753, at *2 (Ind. Ct. App. Sept. 23, 2015). Although the trial court is not required to consider aggravating and mitigating factors when deciding whether to revoke probation, *Treece*, 10 N.E.3d at 59-60, "at a minimum, a probationer's mental state must be considered in the dispositional determination of a probation revocation proceeding," *Patterson v. State*, 659 N.E.2d at 222-23. However, evidence of "a mental disease or defect is not dispositive of [the] case." *Patterson*, 659 N.E.2d at 223. Rather, the trial court is obligated only to consider the information as a factor in making its dispositional determination, and it retains full discretion to find that the evidence of a mental health condition does not excuse or mitigate the probation violation. *Id.*

[11] Here, Mattingly admitted to the violation of probation; therefore, no evidentiary hearing was held on that issue, and the matter was scheduled for a dispositional hearing. At that hearing Mattingly testified that, at the time she had possessed and used the Alpha-PVP, she was very depressed and was mourning her best friend's death. She also testified as to other potentially

mitigating factors, such as a non-violent criminal history and her admission to violating probation, which saved the court time and resources.

[12] In revoking Mattingly's probation and Community Corrections placement, the trial court heard Mattingly's testimony and took into consideration her criminal history, likelihood of recidivism, and admission to the violation, which saved the court time and resources. It was within the trial court's discretion to give little weight to the potentially mitigating factors Mattingly raised. *See, e.g.*, *Wann v. State*, 997 N.E.2d 1103, 1106 (Ind. Ct. App. 2013) ("Generally speaking, as long as the trial court follows the procedures [for revoking probation], the trial court may properly order execution of a suspended sentence."). The trial court was also within its discretion to give little or no weight to Mattingly's testimony about her mental health. *Patterson*, 659 N.E.2d at 223. This is especially so since she did not claim that her mental health made her incapable of forming the requisite intent to commit the crime that was the basis of her violation of probation. *Id.* Moreover, Mattingly's testimony "was not so convincing or conclusive as to compel the court to find that the probation violation was excused or mitigated by the alleged mental condition." *Id.* The trial court did not abuse its discretion in ordering Mattingly to serve the balance of her previously suspended sentence.

[13] Affirmed.

Riley, J., and May, J., concur.