# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 18 2016, 8:14 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Dale W. Arnett
Winchester, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Jodi Kathryn Stein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Phillip D. Martin, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | October 18, 2016 <br><br> Court of Appeals Case No. 35A05-1604-CR-1008 <br><br> Appeal from the Huntington Superior Court <br><br> The Honorable Jeffrey R. Heffelfinger, Judge <br><br> Trial Court Cause No. 35D01-0912-FC-251 |

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellant-Defendant, Phillip D. Martin (Martin), appeals the revocation of his probation.

We affirm.

## ISSUES

Martin raises two issues on appeal, which we restate as follows:

(1) Whether the State presented sufficient evidence to support the revocation of Martin's probation; and

(2) Whether the trial court abused its discretion in its imposition of sanctions.

## FACTS AND PROCEDURAL HISTORY

On December 18, 2009, Martin was arrested in Huntington County, Indiana, and was subsequently charged with Count I, operating a motor vehicle after forfeiture of license for life, a Class C felony, Ind. Code § 9-30-10-17; and Count II, excessive speed, a Class C infraction, I.C. §§ 9-21-5-2(2); -13(a). On April 27, 2010, Martin entered into a plea agreement with the State, pursuant to which he agreed to plead guilty to Count I, a Class C felony. In exchange, the State would dismiss Count II. The State also agreed to a sentencing cap of two years on the executed portion of Martin's sentence. Sentencing was otherwise left to the discretion of the trial court. On June 1, 2010, the trial court conducted a sentencing hearing. The trial court accepted Martin's guilty plea and sentenced him to a term of eight years, with two years executed in the Indiana Department of Correction and six years suspended to probation. In

part, Martin's conditions of probation stipulated that he "shall not commit a criminal offense" or "carry, use or possess any firearms." (Appellant's App. Vol. III, p. 10).

[5] Approximately five years later, on July 29, 2015, officers of the Wayne County Sheriff's Department were dispatched to the KOA Campground in Richmond, Wayne County, Indiana, on the report of "a heated argument." (State's Exh. 10). Upon arrival, Officer Christa Brown (Officer Brown) spoke with Goldie Martin (Goldie), who "was very upset." (Tr. p. 17). Goldie reported that she and her estranged husband, Martin, had been involved in an argument in the presence of their nine-year-old grandson. According to Goldie, they began arguing because Martin was talking on the telephone instead of conversing with their grandson. The argument escalated to the point that she and Martin were wrestling over the keys to her vehicle. Goldie stated that Martin threw a lawn chair at the driver-side door of her vehicle, and he tossed her purse into the campfire, although the purse did not sustain any damage. Goldie also informed Officer Brown that Martin grabbed hold of her ponytail and slammed her head against the steering wheel and "that he put his hands around her neck . . . and strangled her with both hands." (Tr. p. 21). Goldie indicated that she "was very scared to be around [Martin]," and Officer Brown observed that Goldie's "hair was in a disarray. She had red marks on her skin and she was crying." (Tr. pp. 17-18). Goldie also had a broken, bloody fingernail.

[6] In addition, Goldie mentioned to Officer Brown that Martin "had been carrying a handgun the day prior," which she believed was located in her vehicle. (Tr. p.

23). Goldie gave the officers permission to search her vehicle, and a Glock .45 caliber handgun was retrieved. When officers spoke with Martin, he explained that the argument had begun because Goldie had overheard him having a telephone conversation with a woman with whom he had been having an affair. However, he denied that he engaged in any kind of physical altercation with Goldie. Martin was arrested.

[7] On August 4, 2015, the State filed an Information in Wayne County, charging Martin with Count I, domestic battery, a Level 6 felony, I.C. § 35-42-2-1.3(a),(b)(2); Count II, strangulation, a Level 6 felony, I.C. § 35-42-2-9(b)(1); and Count III, unlawful possession of a firearm with a prior felony conviction, a Level 5 felony, I.C. § 35-47-2-1(e). On August 19, 2015, the State filed a petition to revoke Martin's probation in the Huntington County case, alleging that he had violated the terms of his probation by committing a criminal offense in Wayne County. On April 4, 2016, the trial court conducted a fact-finding hearing. The State relied on the testimony of Officer Brown, who reiterated the statements that Goldie had made at the scene, as well as Goldie's recorded statement and photographic evidence. Goldie testified as a defense witness and indicated that she no longer remembered what had transpired during her argument with Martin on July 29, 2015; however, she stated that Martin never battered or strangled her. In addition, Goldie testified that she was so "angry and hysterical" after hearing the voice of Martin's mistress on the phone that she "would have said anything" to get Martin into trouble. (Tr. p. 43). She further added that the handgun did not belong to Martin. Rather, she testified

that she had received the gun from a couple who attended her church—whose names she could not remember—because they were concerned about the safety of a woman living alone. Martin also testified, denying that he committed any of the charged offenses.

[8] At the close of the evidence, the trial court found that Goldie "was a victim who was a victim twice. This is [a] person [who] is so beat down she would have said anything but I think she told the truth the day that the incident happened." (Tr. p. 58). Accordingly, the trial court concluded that Martin had violated the terms of his probation "by committing the offense of domestic battery, the strangulation[,] and the possession of a firearm with a prior[] felony conviction." (Tr. p. 57). The trial court ordered that Martin serve the balance of his original sentence.

[9] Martin now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

[10] On appeal, Martin challenges the revocation of his probation. "'Probation is a matter of grace left to trial court discretion, not a right to which a criminal defendant is entitled.'" *Heaton v. State*, 984 N.E.2d 614, 616 (Ind. 2013) (quoting *Prewitt v. State*, 878 N.E.2d 184, 188 (Ind. 2007)). Accordingly, the trial court has discretion to set the conditions of probation and to revoke probation if those conditions are violated. *Id.* On appeal following a trial court's determination of a probation violation and imposition of sanctions, we review for an abuse of discretion. *Id.* It is an abuse of discretion if the trial

court's "decision is clearly against the logic and effect of the facts and circumstances, or when the trial court misinterprets the law." *Id.* (internal citation omitted). Where the defendant has alleged that there is insufficient evidence to find a violation of probation, our review is the same as with any other sufficiency of the evidence question. *Pierce v. State*, 44 N.E.3d 752, 755 (Ind. Ct. App. 2015). As such, our court does not reweigh evidence or assess the credibility of witnesses, and we consider only "the evidence favorable to the State and all reasonable inferences therefrom." *Id.*

[11] Although probation is a favor granted by the trial court rather than a matter of right, once the favor is granted, the defendant's liberty interests are implicated. *Vernon v. State*, 903 N.E.2d 533, 536 (Ind. Ct. App. 2009), *trans. denied*. Thus, prior to having his probation revoked, a defendant is entitled "to some procedural due process." *Id.* However, "[b]ecause probation revocation does not deprive a defendant of his absolute liberty, but only his conditional liberty, he is not entitled to the full due process rights afforded a defendant in a criminal proceeding." *Id.* Rather, the minimum due process rights to which a probationer is entitled include:

> (a) written notice of the claimed violations of probation; (b) disclosure of evidence against him; (c) opportunity to be heard and present evidence; (d) the right to confront and cross-examine adverse witnesses . . . ; (e) a neutral and detached hearing body; and (f) a written statement by the factfinder as to the evidence relied on and reasons for revoking probation.

*Id.* at 536-37.

[12] The revocation of a defendant's probation requires the trial court to engage in a two-step process. "First, the trial court must make a factual determination that a violation of a condition of probation actually occurred. Second, if a violation is found, then the trial court must determine the appropriate sanctions for the violation." *Heaton*, 984 N.E.2d at 616 (internal citation omitted). "[T]he correct burden of proof for a trial court to apply in a probation revocation proceeding is the preponderance of the evidence standard." *Id.* at 617. The violation of a single condition of probation is sufficient to support a probation revocation. *See Richardson v. State*, 890 N.E.2d 766, 768 (Ind. Ct. App. 2008) (quoting *T.W. v. State*, 864 N.E.2d 361, 364 (Ind. Ct. App. 2007), *trans. denied*). Thus, "[i]f the trial court's finding of a violation is supported by substantial evidence of probative value, then we will affirm the revocation of probation. When the alleged probation violation is the commission of a new crime, conviction of the new crime is not required." *Pierce*, 44 N.E.3d at 755 (internal citation omitted).

### I. *Sufficiency of Evidence of Violation*

[13] Martin claims that there is insufficient evidence to support the trial court's determination that he violated his probation. He first contends that "it is unclear as to whether or not the trial court actually used preponderance of the evidence" as the standard in finding a probation violation. (Appellant's Br. p. 13). In its written Order on Probation Violation, the court stated that it found Martin had violated the terms of his probation "by being arrested on 08/05/2015" in Wayne County. (Appellant's App. p. 14). Because an arrest

requires only probable cause, Martin now insists that the trial court simply relied on the fact that there was probable cause to make an arrest in support of its determination that he violated his probation. We disagree.

[14] One of Martin's probation conditions stipulated that he must "not *commit* a criminal offense." (Appellant's App. Vol. III, p. 10) (emphasis added). In its petition to revoke probation, the State alleged that Martin violated this condition, as evidenced by the fact that he was charged with domestic battery, strangulation, and unlawful possession of a firearm with a prior felony conviction. At the hearing, the State presented evidence to establish that Martin actually committed the new offenses with which he was charged. At the conclusion of the fact-finding hearing, the trial court specifically stated:

> The burden is the preponderance of the evidence. I find that [Martin] has violated the terms of probation *by committing the offense* of domestic battery, the strangulation and the possession of a firearm with a prior[] felony conviction. . . . In this particular case the victim was upset but she was lucid. She gave very detailed statements the day that it happened. . . . One of the things that the Court of Appeals does not get . . . they do not get to ascertain what the witnesses look like when they testify. In this particular case, this was a victim who was a victim twice. This is [a] person [who] is so beat down she would have said anything but I think she told the truth the day that the incident happened.

(Tr. pp. 57-58) (emphasis added) (last ellipsis in original).

[15] As already mentioned, the trial court is required to apply the preponderance of the evidence standard in a probation revocation proceeding. *Heaton*, 984

N.E.2d at 617. Here, the trial court specifically noted the appropriate burden of proof, and we presume that a trial court knows and follows the applicable law. *See Thurman v. State*, 793 N.E.2d 318, 321 (Ind. Ct. App. 2003). Moreover, notwithstanding the language contained in the written Order on Probation Violation, it is evident from the transcript that the trial court found a probation violation because a preponderance of the evidence established that Martin *committed* at least one new offense, not simply because he was arrested. *See Wilson v. State*, 708 N.E.2d 32, 33 (Ind. Ct. App. 1999) (stating that a trial court's "oral statement, if it contains the facts relied upon and reasons for revocation, and is reduced to writing in the transcript of the hearing, is sufficient to satisfy" the due process requirement that a trial court "set forth in writing the evidence relied upon and the reasons for his probation revocation"); *Hubbard v. State*, 683 N.E.2d 618, 621 (Ind. Ct. App. 1997) (noting that, taken together, the trial court's written order of revocation *and* the hearing transcript provided an adequate basis for appellate review and thus satisfied due process).[1]

[16]   Martin additionally asserts that there is insufficient evidence to support the trial court's determination that he committed domestic battery. Specifically, he argues that the trial court

> seemed to ignore the evidence before it that
> 1) at the hearing both Goldie and [Martin] testified no battery

---

[1] Although Martin contends that the trial court's written Order reveals that the trial court improperly relied on the wrong standard of proof, Martin does not challenge that the trial court's written Order as violating his due process rights by failing to set forth the facts and reasons for revoking his probation.

occurred.

2) the pictures show no injury or signs of injury except a broken fingernail.

3) Goldie's earlier statement of slamming her head against the steering wheel could not have been true because there was no sign of injury from that type of action.

4) Goldie's initial statement about [Martin] throwing her purse into the campfire could not [have] been true because the purse was unscathed.

(Appellant's Br. p. 14) (citations omitted). We find that Martin's argument amounts to a request that we reweigh evidence, which we will not do.

[17] Martin was charged with domestic battery under Indiana Code section 35-42-2-1.3(a),(b)(2), which provides that "[a] person who knowingly or intentionally touches an individual who . . . is or was a spouse of the other person . . . in a rude, insolent, or angry manner that results in bodily injury to the person" and does so "in the physical presence of a child less than sixteen (16) years of age, knowing that the child was present and might be able to see or hear the offense" commits domestic battery as a Level 6 felony. The evidence most favorable to the trial court's decision establishes that on July 29, 2015, Martin and Goldie, who were married but living apart, were camping with their nine-year-old grandson at the KOA Campground. After Goldie overheard Martin's telephone conversation with his girlfriend, an argument ensued, which escalated to a physical confrontation. At some point during the altercation, their grandson ran to the Campground's main office for assistance, and the police were summoned. When the police arrived, Goldie's "hair was in a disarray," and "[s]he had red marks on her skin and she was crying." (Tr. pp.

17-18). Goldie informed Officer Brown that she was scared of Martin, who had "used [her] ponytail to slam her head against the steering wheel" after they had been wrestling over the keys to her vehicle. (Tr. p. 21). The photographic evidence demonstrates, in part, that Goldie's hair had been pulled loose from its ponytail, and she had a broken and bloody fingernail. There is no indication in the evidence as to what part of Goldie's head was slammed against the steering wheel—*i.e.*, whether it was her forehead or the side or back of her head; thus, Martin's assertion that the photographs do not depict any apparent injuries to Goldie's face has little merit.[2] It was well within the discretion of the trial court to discredit Goldie's testimony at the fact-finding hearing and to accord more weight to the statements she made immediately following the incident. Moreover, the trial court was under no obligation to accept Martin's self-serving testimony as true. Accordingly, we find that a preponderance of the evidence establishes that Martin committed the offense of domestic battery.[3]

---

[2] Goldie's recorded statement was admitted into evidence during the hearing (State's Exh. 9). Although our court did not receive a copy of this recording, the State indicated during its closing argument that in her recorded statement, Goldie mentioned that Martin "hurt her" when he pulled her hair and hit her head against the steering wheel. (Tr. p. 54).

[3] Because we find that there is a preponderance of the evidence to support the trial court's determination that Martin committed the crime of domestic battery, we need not address Martin's contentions regarding the sufficiency of the evidence as to his unlawful possession of the firearm. *See Richardson*, 890 N.E.2d at 768 ("Violation of a single condition of probation is sufficient to revoke probation.") (quoting *T.W.*, 864 N.E.2d at 364). Moreover, we note that Martin has not offered a cogent argument relating to the trial court's determination that he committed the offense of strangulation, which alone would be sufficient to warrant the revocation of his probation. Martin has waived this argument for appeal. *See* Ind. Appellate Rule 46(A)(8)(a).

## II. *Revocation and Sanctions*

Martin next claims that following its finding of a probation violation, the trial court abused its discretion by revoking his probation and imposing the balance of his original sentence. If the trial court finds that a defendant has violated a condition of probation,

> the court may impose one (1) or more of the following sanctions:
>
> (1) Continue the person on probation, with or without modifying or enlarging the conditions.
>
> (2) Extend the person's probationary period for not more than one (1) year beyond the original probationary period.
>
> (3) Order execution of all or part of the sentence that was suspended at the time of initial sentencing.

I.C. § 35-38-2-3(h). On appeal, Martin asserts that he "had faithfully reported to probation and had complied with all the rules" during the first "[four and one-half] years of his probation." (Appellant's Br. p. 15). Thus, he simply argues that "[t]o execute the entire [six] years of probation for the first violation of probation . . . seems rather harsh and surely must be an abuse of discretion." (Appellant's Br. p. 16).

Our supreme court has stated,

> Once a trial court has exercised its grace by ordering probation rather than incarceration, the judge should have considerable leeway in deciding how to proceed. If this discretion were not afforded to trial courts and sentences were scrutinized too

severely on appeal, trial judges might be less inclined to order probation to future defendants. Accordingly, a trial court's sentencing decisions for probation violations are reviewable using the abuse of discretion standard.

*Prewitt*, 878 N.E.2d at 188.

[20] We first note that the trial court was statutorily authorized to require that Martin execute "all . . . of the sentence that was suspended at the time of initial sentencing." I.C. § 35-38-2-3(h)(3). Although Martin served the majority of his probationary period without any violations, he engaged in a physical altercation with his estranged wife, who has been battling a terminal illness, in the presence of their young grandson. The record indicates that a verbal argument over Martin's affair escalated to a physical altercation in which he grabbed Goldie's hair and slammed her head against the steering wheel, and he wrapped his hands around her neck. Martin also threw Goldie's purse into the fire pit, and he dented the door of her vehicle by throwing a lawn chair at it. There is further evidence that Martin was unlawfully in possession of a handgun. Accordingly, based on this evidence, we cannot say that the trial court abused its discretion by ordering that his entire suspended sentence be executed.

[21] Martin also claims that the trial court abused its discretion because he was denied the "chance to present any mitigating evidence as to sentencing such as work history, support payments or family dynamics." (Appellant's Br. p. 16). As previously mentioned, due process requires the court to hold an evidentiary hearing on the revocation of probation. *See Vernon*, 903 N.E.2d at 537. If a

probation violation is proven, the trial court must decide whether the violation warrants revocation of the probation. *Treece v. State*, 10 N.E.3d 52, 56 (Ind. Ct. App. 2014) (quoting *Sanders v. State*, 825 N.E.2d 952, 955 (Ind. Ct. App. 2005), *trans. denied*), *trans. denied*. "In making the determination of whether the violation warrants revocation, the probationer must be given an opportunity to present evidence that explains and mitigates [his] violation." *Id.* (alteration in original) (quoting *Sanders*, 825 N.E.2d at 955).

[22] We find the present case is similar to *Vernon*, 903 N.E.2d at 533. In *Vernon*, following a petition to revoke the defendant's probation for violations including the commission of new crimes, an evidentiary hearing was held, at the close of which the trial court concluded that the defendant violated the conditions of his probation and revoked the probation. *Id.* at 536. After the trial court ordered the defendant's commitment to the Department of Correction, the defendant attempted to introduce additional evidence regarding "some of the good [he had] done," but the trial court refused him this opportunity. *Id.* On appeal, the defendant asserted that his rights were violated because the trial court denied him the opportunity to present evidence that explained and mitigated his violation. *Id.* at 537. Our court noted that the defendant was afforded an evidentiary hearing, during which he testified and denied the allegations against him, and the defendant cited "no authority showing that he [was] entitled to another [hearing]." *Id.*

[23] In *Vernon*, we distinguished between situations where a defendant admits to his probation violations and those in which he denies the allegations. In the former

case, an evidentiary hearing to determine whether there has been a violation is not necessary. *Id.* Rather, the trial court proceeds directly to determining whether the violation warrants revocation. *Id.* In these cases, the probationer "must still be given an opportunity to offer mitigating evidence suggesting that the violation does not warrant revocation." *Id.* (quoting *Woods v. State*, 892 N.E.2d 637, 640 (Ind. 2008)). However, in the *Vernon* case, the defendant had an opportunity to present any evidence to explain and mitigate his violation during the evidentiary hearing. Therefore, our court affirmed the revocation of his probation. *See id.*

[24] As in *Vernon*, in the present case, Martin was afforded an evidentiary hearing, during which he testified, denying the allegations raised in the petition to revoke his probation. Thus, the State asserts that despite his opportunity "to offer any mitigating circumstances to convince the trial court to impose a lesser sanction," Martin "simply stood mute and effectively waived his opportunity." (State's Br. p. 13). On the other hand, Martin now asserts that the holding in *Vernon* "needs to be revisited!" (Appellant's Reply Br. p. 6). He argues that

> [w]hen there is a contested hearing on whether or not a probation rule has been fractured by allegedly committing a crime, evidence of such things as work history, family needs, obligations, support, and medical maladies are irrelevant to the purpose of the hearing. Those kinds of mitigators don't explain why a violation occurred and would only go towards mitigating any sentence.

(Appellant's Reply Br. p. 6). Martin further contends that he had "no opportunity to present mitigation evidence . . . [or] to explain the allegations

because he denied all the allegations." (Appellant's Reply Br. p. 6). As a final point, Martin insists that

> the State is dead wrong that [he] stood mute in the issue. The [Attorney General] wasn't there and I was. The trial judge rendered the decision and immediately thereafter the sentence and then the hearing was over. When Counsel tried to speak further to the judge, the judge spoke back condescendingly and arrogantly in the same manner he had acted throughout the entire course of the case as he turned his back and walked away.

(Appellant's Reply Br. pp. 6-7). We find no merit in Martin's arguments.

[25] Our court has previously stated that "[t]rial courts are not required to balance 'aggravating or mitigating circumstances when imposing sentence in a probation revocation proceeding.'" *Treece*, 10 N.E.3d at 59. Furthermore, due process required that Martin have the "opportunity to be heard and present evidence," which he clearly received. *Vernon*, 903 N.E.2d at 536. We find that it was incumbent upon Martin to present all of his evidence to either explain or mitigate his probation violation prior to resting his case. Finally, we find absolutely nothing in the record to support Martin's insolent claim that the trial court "condescendingly and arrogantly" prevented him from offering the evidence he desired. (Appellant's Reply Br. p. 7). Martin received an evidentiary hearing and an opportunity to present evidence in accordance with due process, and the trial court did not abuse its discretion by imposing sanctions without hearing additional evidence.

## CONCLUSION

Based on the foregoing, we conclude that there is sufficient evidence to support the revocation of Martin's probation, and the trial court acted within its discretion in sanctioning Martin's probation violations.

Affirmed.

Bailey, J. and Barnes, J. concur