## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 16 2017, 9:52 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Christopher L. Clerc
Columbus, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Eric P. Babbs
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Clay P. Manvilla, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | March 16, 2017 <br><br> Court of Appeals Case No. <br> 03A04-1610-CR-2445 <br><br> Appeal from the Bartholomew <br> Circuit Court <br><br> The Honorable William E. Vance, <br> Senior Judge <br><br> Trial Court Cause No. <br> 03C01-1311-FD-5873 |

**Najam, Judge.**

## Statement of the Case

Clay P. Manvilla appeals the trial court's revocation of his probation, following a revocation hearing at which Manvilla admitted to violating the terms of his probation. He raises one issue on appeal, namely, whether the trial court abused its discretion when it ordered him to serve the balance of his previously suspended sentence. We affirm.

## Facts and Procedural History

On November 1, 2013, the State charged Manvilla with Count I, theft, as a Class D felony, and Count II, criminal mischief, as a Class B misdemeanor. According to the probable cause affidavit, Manvilla and two other individuals used a bolt cutter to remove the lock from a work trailer. When the trailer's owner found Manvilla and the other individuals standing next to the trailer, several power tools had been removed from the trailer, and Manvilla and the others fled on foot. The victim immediately called the police, who subsequently arrested Manvilla. Manvilla pleaded guilty to theft as charged in Count I, and the State ultimately dismissed Count II. The pre-sentence investigation report showed that Manvilla had a lengthy juvenile history, including two adjudications for theft, two adjudications for resisting law enforcement, and an adjudication for criminal mischief.

On May 15, 2014, the trial court sentenced Manvilla to thirty days at the Bartholomew County Jail with credit for ten days served and two years in the Indiana Department of Correction, fully suspended to probation, with the

condition that Manvilla "comply with the specific programs recommended by Community Corrections, which may include work release/residential placement, day reporting, electronic monitoring, counseling or education programs." Appellant's App. at 54-55.

[4] On August 25, 2014, a probation officer filed a petition to revoke Manvilla's probation due to his failure to pay day reporting fees and drug screen fees. In response, the trial court conducted a series of status hearings regarding Manvilla's employment and payment of fees, and the court ordered Manvilla to take certain steps and make certain payments. On April 8, 2015, Manvilla obtained a high school diploma, and, on April 22, Manvilla received a completion certificate from the Bartholomew County Court Services' Prime for Life Program.

[5] On March 1, 2016, the State filed another petition to revoke Manvilla's probation due to his arrest for illegal consumption on February 21, 2016, and his failure to report that arrest to his probation officer. At a hearing on May 9, Manvilla admitted to violating the terms of his probation as alleged. As a result, the trial court extended Manvilla's probation "through the end of November, 2016" and ordered that Manvilla "be placed in work release for thirty (30) actual days." *Id*. at 27.

[6] While Manvilla was at the work release center, he was aware of the procedure by which persons with cigarettes were allowed to take smoke breaks outside while in a confined area. He also knew that he was required to comply with the

rules and regulations of the work release center. One day while at the work release center, Manvilla attempted to go out to the smoking area and was stopped by Residential Officer Brad Southers. Southers indicated to Manvilla that Manvilla should not proceed into the smoking area because Manvilla did not have any cigarettes. Manvilla ignored Southers, proceeded forward, and made physical contact with Southers.

[7] On June 6, 2016, the State filed a third petition to revoke Manvilla's probation in which it noted that the work release program had discharged Manvilla as unsuccessful on May 25 and that he was in arrears on payment of his fees. On September 12, the State amended the petition to revoke, specifically alleging that "[Manvilla] initiated inappropriate physical contact with Residential Officer Brad Southers." *Id*. at 17-18. On September 26, the trial court conducted a revocation hearing at which Manvilla admitted to, and the trial court found, that Manvilla "did violate the terms of his probation by having inappropriate physical contact with Residential Officer Brad Southers and by failure to pay fees as ordered." *Id*. at 13. Rob Gaskill, the Director of Residential Services for Bartholomew County Court Services, which runs the work release facility at which Manvilla was located, recommended that Manvilla be incarcerated for the balance of his sentence.

[8] The trial court proceeded to disposition and allowed Manvilla an opportunity to speak. Manvilla acknowledged that as a juvenile he had been offered rehabilitative programming and treatment on numerous occasions and that, as a juvenile, he had been found in violation of his probation numerous times.

When asked to explain why he made physical contact with Southers, Manvilla stated the following:

> I honestly I . . . I didn't mean to. I was . . . trying to get to be able [sic] to smoke a cigarette. Somebody told me they would give me one if I got out there. I've seen it done a few times. I honestly didn't know it would have been taken this far and I was given seven days [of] smoke restriction and I was doing that and then I got put in jail. I didn't mean to. I wasn't trying to physically move him or nothing. I was just trying to get out and smoke a cigarette.

Tr. at 13.

[9] In reaching its sanctioning decision, the trial court stated as follows:

> Well [. . .] at first [b]lush, it does sound like we're talking about a relatively minor incident. But, don't forget [. . .] the defendant has had eight prior . . . difficulties with the law. He's had difficulties complying with the rules and inappropriate contact with corrections officers [which] is something I think is really important. I don't think that that alone can be . . . I think that is enough to remove him from the minor problem category. I think the Sentencing Order in this case reflects that the Court determined that there were no mitigating circumstances. That the defendant's prior criminal history is such that an aggravated sentence was appropriate.

*Id*. at 15.

[10] The trial court revoked Manvilla's probation and ordered him to serve the balance of his two-year sentence in the Department of Correction. This appeal ensued.

# Discussion and Decision

[11] Manvilla argues that the trial court abused its discretion when, after revoking his probation, it ordered him to serve his entire previously suspended sentence. "Probation is a matter of grace left to trial court discretion, not a right to which a criminal defendant is entitled." *Prewitt v. State*, 878 N.E.2d 184, 188 (Ind. 2007); *see also Treece v. State*, 10 N.E.3d 52, 56 (Ind. Ct. App. 2014), *trans. denied*. We review probation violation determinations and sanctions for an abuse of discretion. *Heaton v. State*, 984 N.E.2d 614, 616 (Ind. 2013). "An abuse of discretion occurs where the decision is clearly against the logic and effect of the facts and circumstances, or when the trial court misinterprets the law." *Id.* (citations omitted).

[12] A probation revocation proceeding is a two-step process. *Id.* First, the trial court must determine whether the preponderance of the evidence showed that a probation violation occurred. *Id.*; *see also* Ind. Code § 35-38-2-3 (2016).

> When a probationer admits to violations of the terms of his probation, the procedural safeguards of [I.C. § 35-38-2-3] are unnecessary. Instead, the court can proceed to the second step of the inquiry and determine whether the violation warrants revocation. However, even a probationer who admits the allegations against him must still be given an opportunity to offer mitigating evidence suggesting that the violation does not warrant revocation.

*Woods v. State*, 892 N.E.2d 637, 640 (Ind. 2008) (citations omitted). Here, Manvilla admitted that he violated the terms of his probation.

[13]     In the second step of the process, the trial court must determine whether the probation violation warrants revocation of probation or some lesser sanction. *Heaton*, 984 N.E.2d at 616. Indiana Code Section 35-38-2-3(h) provides:

> If the court finds that the person has violated a condition at any time before termination of the period, and the petition to revoke is filed within the probationary period, the court may impose one (1) or more of the following sanctions:
>
> (1) Continue the person on probation, with or without modifying or enlarging the conditions.
>
> (2) Extend the person's probationary period for not more than one (1) year beyond the original probationary period.
>
> (3) Order execution of all or part of the sentence that was suspended at the time of initial sentencing.

Our supreme court has held that this statute "permits judges to sentence offenders using any one of or any combination of the enumerated powers." *Prewitt*, 878 N.E.2d at 187. A single violation of a condition of probation is sufficient to permit the trial court to revoke probation. *Treece*, 10 N.E.3d at 59.

[14]     Here, Manvilla does not dispute that the trial court had authority to sanction him pursuant to Indiana Code Section 35-38-2-3(h), given that he admitted to the probation violation. Rather, Manvilla maintains that the trial court abused its discretion by failing to take his admission to the violation, his efforts to rehabilitate himself, and the minor nature of the probation violation into account as mitigating factors when determining the appropriate sanction for his

probation violation. In support, he relies on *Anglemyer v. State*, 868 N.E.2d 482 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007), and *Puckett v. State*, 956 N.E.2d 1182 (Ind. Ct. App. 2011). However, neither case is applicable to the instant case. *Anglemyer* related to the requirements on a trial court when it imposes a sentence, not when it imposes sanctions for a probation violation. And *Puckett* held that it was improper for a trial court to consider, at a probation revocation hearing, whether the original plea was too lenient. 956 N.E.2d at 1187. Here, the trial court did not question the propriety of the original sentence; instead, it followed the terms of the original plea agreement.

[15] Moreover, *Puckett* does not stand for the proposition that a trial court must consider mitigating factors when imposing a sanction in a probation revocation proceeding, as Manvilla seems to contend. In fact, the opposite is true. We have held that, while probationers must be given the opportunity to present mitigating factors, *Woods*, 892 N.E.2d at 640, "trial courts are not required to balance aggravating or mitigating circumstances when imposing [a] sentence in a probation revocation proceeding," *Treece*, 10 N.E.3d at 59 (quotation omitted). This stems from the fact that a probation revocation hearing does not involve the imposition of a sentence, but is a proceeding to consider the execution of a sentence already imposed. *See Mitchell v. State*, 619 N.E.2d 961, 963-64 (Ind. Ct. App. 1993), *overruled on other grounds by Patterson v. State*, 659 N.E.2d 220, 223 n.2 (Ind. Ct. App. 1995). So long as the proper procedures have been followed in conducting a probation revocation, a trial court has discretion to order execution of a suspended sentence upon a finding of a

violation. *Goonen v. State*, 705 N.E.2d 209, 212 (Ind. Ct. App. 1999). Therefore, the trial court did not abuse its discretion when it refused to give weight to the mitigating factors Manvilla raised.

[16] The logic and effect of the facts and circumstances in this case support the trial court's sanction for Manvilla's admitted probation violation. Manvilla had a criminal history and a pattern of probation violations stemming back to his juvenile history. And, although Manvilla admitted that he violated the terms of his probation, he did not express remorse or otherwise take responsibility for the incident involving Officer Southers. Moreover, the Director of the work release program in which Manvilla had been placed recommended that Manvilla be incarcerated for the balance of his sentence. The trial court was well within its discretion to order Manvilla to serve his entire previously suspended sentence. *See Prewitt*, 878 N.E.2d at 188 (holding trial court did not abuse its discretion in ordering defendant to serve previously suspended sentence when he had multiple probation violations, a past criminal history, and an inability to comply with ordered programs).

[17] Affirmed.

Riley, J., and Bradford, J., concur.