Chad McQUEEN, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 33A01–0607–CR–304.

Court of Appeals of Indiana.

March 20, 2007.

---

John T. Wilson, Anderson, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Richard C. Webster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Chad McQueen appeals the trial court's revocation of his direct commitment to a community corrections program and order to serve the remainder of his six-year sentence in the Indiana Department of Correction ("DOC"). Because McQueen admitted that he took OxyContin and as a result tested positive for oxycodone in violation of the Henry County Work Release Center rules, McQueen cannot establish fundamental error in the trial court's admission of testimony regarding the results of the toxicology report. Next, because McQueen had violated several of the Work Release Center rules and had been given numerous chances, the trial court did not err in revoking his direct commitment and ordering him to serve the remainder of his sentence in the DOC. Finally, violation of a condition of community corrections does not constitute an offense within the purview of double jeopardy analysis; therefore, there is no double jeopardy violation here. We therefore affirm the trial court.

## Facts and Procedural History

On January 26, 2005, McQueen pled guilty to operating a vehicle while intoxicated as a Class D felony[1] and to being a habitual substance offender.[2] In exchange, the State dismissed charges of operating a vehicle while intoxicated as a Class C misdemeanor, public intoxication as a Class B misdemeanor, driving while suspended as a Class A misdemeanor, and failure to stop after an accident as a Class B misdemeanor as well as all charges under Cause Nos. 33D02–0008–CM–699, 33D02–0206–FD–105, and 33D02–0005–DF–105. The State recommended a six-year sentence. According to the plea agreement, the trial court was "free to assess any sentence within the range of possibilities greater · than the recommended sentence. The parties agree that the additional sentence over the recommended sentence will be suspended." Appellant's App. p. 13.

On February 14, 2005, the trial court sentenced McQueen to two years for operating a vehicle while intoxicated as a Class D felony enhanced by four years for his habitual substance offender status, for a total sentence of six years to be served at the DOC. Pursuant to Indiana Code chapter 35–38–2.6,[3] the court ordered this sentence "to be served as a direct commitment to Henry County Community Corrections to be served at Henry County Work Release Center, with credit for 88 actual days." Id. at 32.

On November 20, 2005, McQueen took a drug test at the Work Release Center, and the results were received by mail on December 8, 2005. The toxicology report showed that McQueen tested positive for oxycodone. As a result, McQueen was removed from the Work Release Center and placed in the Henry County Jail on that same day. In January 2006, the Henry County Sheriff's Department informed the Director of Henry County Community Corrections by letter that McQueen had failed drug tests in May 2005 and on November 20, 2005, had returned to the Work Release Center late, had worked over eighty hours, was insubordinate to officers, and had missed GED classes. Because of McQueen's failure to follow the rules and policies of the Work Release Center, which therefore made him ineligible to participate in its programs, the Henry County Sheriff's Department "requested that inmate McQueen be removed from the Work Release Center and placed in DOC to serve the remainder of his sentence." Id. at 33.

An initial hearing was held in February 2006 regarding McQueen's "violation of his direct commitment to Henry County Community Corrections through Henry County Work Release Center." Id. at 5. The final hearing was held in May 2006. Following that hearing, the trial court entered an Order on Revocation of Direct Commitment, which provides in pertinent part:

1. The evidence presented shows, by a preponderance of the evidence, that the defendant violated the terms and conditions of the direct commitment sentence by violating the rules of the Henry County Work Release Center. The defendant basically admitted that he had not complied with said rules when he testified.

1. Ind.Code §§ 9–30–5–2(b), –3.

2. Ind.Code § 35–50–2–10.

3. Indiana Code § 35–38–2.6–3(a) provides, "The court may, at the time of sentencing, suspend the sentence and order a person to be placed in a community corrections program as an alternative to commitment to the department of correction. The court may impose reasonable terms on the placement."

2. The defendant's basic defense, or request to the Court, was that the defendant be given "one more last chance". The Court believes that the direct commitment sentence the defendant was given at the sentencing hearing was this "one more last chance". The defendant was advised at the original sentencing that any violation of the rules of the Henry County Work Release Center could result in the execution of the sentence at the Department of Correction[ ].

3. The Court hereby revokes the defendant's direct commitment to Henry County Community Corrections and orders that the defendant's six (6) year sentence shall be served at the Department of Correction[ ]. The Court finds that the defendant should receive credit for five hundred fifty-one (551) actual days [88 days prior to sentencing and 463 days since sentencing] incarcerated on this case.

*Id.* at 44–45. McQueen now appeals.

### Discussion and Decision

McQueen raises three issues on appeal, which we reorder as follows. First, he contends that the trial court erred in admitting testimony of the results of his November 20, 2005, drug test. Second, he contends that the trial court erred in revoking his direct commitment to community corrections and ordering him to serve the remainder of his sentence in the DOC. Last, he contends that he was "subjected to multiple punishments for the same offense in violation of the prohibition against double jeopardy, pursuant to the Fifth Amendment of the United States Constitution." Appellant's Br. p. 9. We address each issue in turn.

4. "OxyContin is a controlled-release form of the narcotic painkiller oxycodone." PDR

### I. Admission of Testimony Regarding Results of Toxicology Report

First, McQueen contends that the trial court erred in admitting testimony of the results of his November 20, 2005, drug test because it constitutes hearsay, thereby denying "him his due process right to confront and cross examine all witnesses against him." Appellant's Br. p. 11. Because McQueen failed to object to the testimony at the hearing and has therefore waived this issue for appellate review, he argues that the error is fundamental. The "fundamental error" exception is extremely narrow and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process. *Mathews v. State,* 849 N.E.2d 578, 587 (Ind.2006). "For error to be 'fundamental,' prejudice to the defendant is required." *Hopkins v. State,* 782 N.E.2d 988, 991 (Ind.2003).

Here, the record shows that Anne Bankson, Commander at the Henry County Sheriff's Department for the Work Release Center, testified at the hearing that McQueen took a drug test at the Work Release Center on November 20, 2005, and that the toxicology report indicated that he "tested positive for oxycodone levels at 324 nanograms. The cutoff is 300 nanograms for a write-up." Appellant's App. p. 59. Although Commander Bankson testified that she had the toxicology report with her, it was not admitted into evidence. McQueen did not object to Commander Bankson's testimony; moreover, on cross-examination McQueen did not question Commander Bankson about the toxicology report. Then, McQueen himself testified that he took OxyContin,[4] which caused him

Health, *available at* http://www.pdrhealth. com/dru g_info/rxdrugpro-

to test positive for oxycodone on November 20, 2005, that he knew he was not supposed to take the drug, and that he knew it was against both the law and the rules of the Work Release Center to do so. *See* Tr. p. 102. In light of McQueen's own testimony that he illegally took OxyContin and as a result tested positive for oxycodone in violation of the Work Release Center rules, there is simply no prejudice to him in the admission of Commander Bankson's testimony that the toxicology report showed that McQueen tested positive for oxycodone and the level was 324 nanograms. Therefore, McQueen cannot establish fundamental error on this issue.

## II. Revocation of Direct Commitment to Community Corrections

▆▆ Second, McQueen contends that the trial court erred in revoking his direct commitment to community corrections and ordering him to serve the remainder of his sentence in the DOC. Specifically, McQueen argues that the court should have placed him back in the Work Release Center or considered an alternative placement. Both probation and community corrections programs serve as alternatives to commitment to the DOC, and both are made at the sole discretion of the trial court. *Cox v. State,* 706 N.E.2d 547, 549 (Ind.1999), *reh'g denied.* A defendant is not entitled to serve a sentence in either probation or a community corrections program. *Id.* Rather, placement in either is a "matter of grace" and a "conditional liberty that is a favor, not a right." *Id.* (quotation omitted).

▆▆ The standard of review of an appeal from the revocation of a community corrections placement mirrors that for revocation of probation. *Id.* at 551. That is, a revocation of community corrections

placement hearing is civil in nature, and the State need only prove the alleged violations by a preponderance of the evidence. *Id.* We will consider all the evidence most favorable to the judgment of the trial court without reweighing that evidence or judging the credibility of witnesses. *Id.* If there is substantial evidence of probative value to support the trial court's conclusion that a defendant has violated any terms of community corrections, we will affirm its decision to revoke placement. *Id.*

▆▆ At the hearing, McQueen himself testified that he took OxyContin, which caused him to test positive for oxycodone on November 20, 2005, and that it was against the Work Release Center rules to do so. The State also presented evidence that McQueen failed a drug test in May 2005 and failed to follow other Work Release Center rules, such as not attending his GED classes. Henry County Sheriff Kim Cronk testified at the hearing that he "went over and above with [McQueen], probably more than I have [with] any other inmate...." Tr. p. 93. Although the Sheriff acknowledged that McQueen had done some good things while at the Work Release Center, he concluded "we can't tolerate continuous abuse of the staff and the positive drug test, and that's why I thought he needed to be locked down for the safety of the facility and himself." *Id.* As such, he asked the trial court to revoke McQueen's direct commitment and order him to serve the remainder of his sentence in the DOC.

▆▆ Alternative sentences such as community corrections serve the humane purposes of avoiding incarceration and of permitting the offender to meet the offender's financial obligations. *Cox,* 706 N.E.2d at 550. "But for sentencing alternatives to be viable options for Indiana

files/drugs/oxy1625.shtml (last visited March 1, 2007).

judges, judges must have the ability to move with alacrity to protect public safety when adjudicated offenders violate the conditions of their sentences." *Id.* In light of the fact that McQueen tested positive for drugs in May 2005, was given a second chance, and then tested positive for drugs again in November 2005 as well as his other violations of the rules of the Work Release Center, the trial court did not err in revoking McQueen's direct commitment to community corrections and ordering him to serve the remainder of his sentence in the DOC.

### III. Double Jeopardy

Last, McQueen contends that by having his direct commitment to community corrections revoked, he was "subjected to multiple punishments for the same offense in violation of the prohibition against double jeopardy, pursuant to the Fifth Amendment of the United States Constitution." Appellant's Br. p. 9. Specifically, he argues that he had "already been punished for a May 2005 positive drug screen, and for failing to attend GED Classes as well as sanctioned for a positive drug screen on November 20, 2005."[5] *Id.* The State responds that a violation of a condition of probation does not constitute an offense within the purview of double jeopardy analysis and therefore there is no double jeopardy violation here.

 It is true that a violation of a condition of probation does not constitute an offense within the purview of double jeopardy analysis. *See Kincaid v. State,* 736 N.E.2d 1257, 1259 (Ind.Ct.App.2000), *reh'g denied.* Revocation proceedings are based upon violations of probation condi-

tions rather than upon the commission of a crime, and the finding of whether a defendant has complied with these conditions is a question of fact and not an adjudication of guilt. *Id.; see also Harris v. State,* 836 N.E.2d 267, 282 n. 20 (Ind.Ct.App.2005) (holding that revocation of the Harris's parole, like revocation of a defendant's probation, did not subject him to double jeopardy under the United States Constitution because of similarities between the two), *trans. denied.* Moreover, because double jeopardy protection applies only to criminal proceedings and probation revocation proceedings are not criminal proceedings, violations must be proven only by a preponderance of the evidence. *Kincaid,* 736 N.E.2d at 1259.

 Here, however, we point out that McQueen was not on probation. Although probation and community corrections programs are not the same, as noted above, they are treated the same for many purposes. That is, they both serve as alternatives to commitment to the DOC; they both are made at the sole discretion of the trial court; a defendant is not entitled to serve a sentence in either, and placement is a "matter of grace" and a "favor, not a right"; the due process rights for revocation of community corrections placement and probation hearings are the same; the standard of review of an appeal from the revocation of a community corrections placement mirrors that for revocation of probation; revocation of community corrections placement and probation hearings are civil in nature, and the State need only prove the alleged violations by a preponderance of the evidence. *Cox,* 706 N.E.2d at 549–51.

---

5. McQueen asserts that he was already punished for the May 2005 positive drug screen and his failure to attend GED classes by being locked down and losing thirty days of credit time. He asserts that he was already pun-

ished for the November 2005 positive drug screen by being remanded from the Work Release Center to the Henry County Jail from December 8, 2005, through the time of the final hearing.

Based on the similarities between probation and community corrections programs, we hold that a violation of a condition of community corrections does not constitute an offense within the purview of double jeopardy analysis. Double jeopardy protection applies only to criminal proceedings, and revocation of community corrections placement proceedings are not criminal proceedings because violations must be proven only by a preponderance of the evidence. In addition, community corrections revocation proceedings are based upon violations of community corrections rules rather than upon the commission of a crime, and the finding of whether a defendant has complied with the rules is a question of fact and not an adjudication of guilt. Therefore, McQueen cannot establish a double jeopardy violation here.

Affirmed.

BAILEY, J., and BARNES, J., concur.