Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT:

**COREY L. SCOTT**
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

CALVIN HORTON,                          )
                                        )
    Appellant-Defendant,            )
                                        )
        vs.                     )     No. 49A05-1207-CR-371
                                        )
STATE OF INDIANA,                       )
                                        )
    Appellee-Plaintiff.             )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Sheila Carlisle, Judge
Cause No. 49G03-1107-FD-49139

**March 6, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

Calvin Horton ("Horton") was sentenced to two years in the Marion County Community Corrections Work Release Program and two years on home detention after he pleaded guilty to Class C felony forgery. After finding that he had violated the conditions of placement at Duvall Residential Center, the trial court revoked his placement in community corrections and ordered the remainder of his sentence to be served at the Indiana Department of Correction. Horton appeals and argues that the State failed to present sufficient evidence to support revocation of his community corrections placement.

We affirm.

### Facts and Procedural History

The facts most favorable to the trial court's decision are as follows. On September 27, 2011, Horton pleaded guilty to one count of Class C felony forgery and was sentenced to four years executed with the first two years through the Marion County Community Corrections Work Release program and the remaining two years through Marion County Community Corrections Home Detention. Horton was subsequently placed at the Duvall Residential Center ("DRC") as part of the work release program.

On January 19, 2012, Horton started working for S&S Complete Services ("S&S") at 9201 West Washington Street under the work release program. Around the end of March 2012, Horton contacted Montgomery to inform her that he may be getting new employment. She told him that before he started his new employment he would need to give her the phone number and contact person of where he was going to work. Tr. p. 6.

2

She also told him he could not start work at his new employment until she verified it. Tr. p. 6.

On March 20, 2012, S&S informed Horton that they no longer had work for him, and they let him go. The following day, Horton began working for Shrum Manufacturing Homes ("Shrum"), but he did not verify this employer with community corrections before beginning work. Tr. pp. 13, 45. Shrum is owned by Larry Fitzgerald ("Fitzgerald"). When Horton started working for Shrum, he was working at the same West Washington Street job site and doing the same demolition work as he did for S&S. However, Horton testified that later he worked at different job sites. On May 14, 2012, Horton contacted Montgomery and informed her he was no longer working for S&S but instead was working for Shrum. Montgomery then called to verify this employment but was informed by Fitzgerald that Horton had stopped working there on April 13, 2012.

On May 16, 2012, the State filed a Notice of Community Corrections Violation and stated three allegations: (1) that Horton violated the Community Corrections Duvall residential center rules and regulations, (2) that Horton violated the conditions of multiple employment passes from April 13, 2012 through May 11, 2012, and (3) that Horton failed to comply with his monetary obligation.

A bifurcated hearing was held on May 31, 2012 and June 28, 2012. At the conclusion of the hearing on June 28, 2012, the trial court found that the State had proven allegations (1) and (2) and that Horton violated conditions 14, 15, and 24 of the Marion County Community Corrections Duvall Residential Contract ("Conditions of Placement"). The trial court then revoked Horton's placement in community corrections

and ordered the remainder of his sentence to be served at the Indiana Department of Correction.

Horton now appeals. Additional facts will be provided as necessary.

**Discussion and Decision**

The State did not file an appellee's brief in this case. When an appellee fails to submit a brief, we apply a less stringent standard of review and may reverse if the appellant established *prima facie* error. Castillo-Aguilar v. State, 962 N.E.2d 667, 669 (Ind. Ct. App. 2012), trans. denied. "*Prima facie* error is 'error at first sight, on first appearance, or on the face of it.'" Id. (quoting Parker v. State, 822 N.E.2d 285, 286 (Ind. Ct. App. 2005)). We apply this rule not to benefit Horton, "but to relieve us of the burden of controverting his arguments." See id. "We are not relieved, however, of our obligation to properly decide the law as applied to the facts of the case." Id.

Horton argues that the evidence was insufficient to support revocation of his community corrections placement. Community corrections placement is at the sole discretion of the trial judge, and "[a] defendant is not entitled to serve a sentence in . . . a community corrections program." McQueen v. State, 862 N.E.2d 1237, 1242 (Ind. Ct. App. 2007). On appeal, "we treat a hearing on a petition to revoke a placement in a community corrections program the same as we do a hearing on a petition to revoke probation." Cox v. State, 706 N.E.2d 547, 549 (Ind. 1999) (citing Brooks v. State, 692 N.E.2d 951, 953 (Ind. Ct. App. 1998)). That is, a community corrections revocation hearing is civil in nature, and the State need only "prove the alleged violations by a preponderance of the evidence." McQueen, 862 N.E.2d at 1242.

4

When sufficiency of the evidence supporting revocation is challenged, "[w]e will consider all the evidence most favorable to the judgment of the trial court without reweighing that evidence or judging the credibility of witnesses." Id. We will affirm revocation, "if there is substantial evidence of probative value to support the trial court's conclusion that a defendant has violated any terms of community corrections[.]" Id. (internal citations omitted). Violation of a single condition of placement is sufficient to revoke placement in community corrections. See Gosha v. State, 873 N.E.2d 660, 663 (Ind. Ct. App. 2007).

Under the Marion County Community Corrections Duvall Residential Center Contract ("Conditions of Placement") that Horton signed and agreed to abide by on October 31, 2011, conditions 14-15, 24 provide:

14. You may only work for employers and at job sites approved in advance by your [Community Supervision Manager ("CSM")]. Any work done for an unapproved employer, or any work done for an approved employer, but at an unapproved location is a violation of this rule.

15. Unless approved in advance by your CSM, you shall only work for an employer at a single and verifiable location. YOU MAY NOT LEAVE THE EMPLOYER'S LOCATION FOR ANY REASON WITHOUT ADVANCE APPROVAL. If a job requires you to travel to multiple locations such as in construction, lawn care, maintenance, etc. you will not be permitted to travel to those locations unless appropriate DRC staff has approved the location of the job-site and the times you will be there in advance.

24. You are to return directly to the DRC as soon as the purpose of your pass is complete. This applies when works shifts are cancelled or end early. This also applies when a location you were authorized to visit is closed or a person you were to meet with is unable to see you.

5

Ex. Vol., State's Ex. 1 (emphasis in original). Thus, these Conditions of Placement placed responsibility on Horton to receive approval *in advance* for changes in employers and job locations and to return to DRC when the purpose of the work pass was complete.

## I. Unapproved Employer

Horton argues that the evidence is insufficient to prove that he violated the Condition of Placement by failing to inform community corrections of his change of employers. When Horton contacted Montgomery in March and indicated he might be getting new employment, Montgomery reiterated to Horton that he could not start new employment until after she verified the new employment. Yet, without receiving approval from community corrections, Horton stopped working at S&S on March 20, 2012 and started working for Shrum the following day. Montgomery and Allison Shine ("Shine"), who is also employed by Marion County Community Corrections, testified that Horton never received approval to work at Shrum. Thus, he violated condition 14, which requires that an employer be approved in *advance* and states that work done for an "unapproved employer . . . is a violation of this rule."

Horton argues that his testimony at the hearing indicated that he informed Montgomery of the change in employer the day he was let go from S&S; however, Montgomery testified that Horton did not inform her of his change in employer until May 14, 2012 and that Shrum was *never* approved as an employer for Horton.[1] Tr. p. 13.

---

[1] We also note on April 12, 2012, Horton filled out a form when meeting with his case manager and indicated that he was still employed by S&S. See Ex. Vol., State's Ex. 2. This is further evidence that Horton had not informed community corrections of his change of employer well beyond the date he had been let go by S&S and started working for Shrum.

6

Horton's argument is simply an invitation to reweigh the evidence and judge the credibility of witness, which we will not do on appeal.

Horton also argues that community corrections was implicitly put on notice because he submitted checks from Shrum to DRC. Even assuming these checks were submitted, under condition 14, Horton had the obligation to have Shrum approved *in advance* as an employer in order for him to begin working there. For all these reasons, we find there was sufficient evidence from which the trial court could have concluded by a preponderance of the evidence that Horton violated the terms of his placement in community corrections by failing to obtain approval in advance to change his employment from S&S to Shrum.

## II. Work Pass Violation

Although Horton's violation of a single condition of placement is enough to revoke probation, the State also presented additional evidence at the hearing that Horton violated the Conditions of Placement by leaving or remaining out on work passes when he was not working. Even if Shrum had been approved as an employer, both Fitzgerald and Montgomery testified that after April 13, 2012[2] Horton stopped working for Shrum. However, Horton continued to leave "Duvall Residential every single day from April 13, 2012, to May 13, 2012" for a minimum of 12 hours at a time under the presumption he was reporting to work. Tr. p. 44. Thus, there was sufficient evidence in the record for

---

[2] Montgomery testified that Fitzgerald had informed her Horton's employment ended on April 13, 2012; however, at the hearing, Fitzgerald testified that Horton's employment ended on April 2, 2012. Despite the inconsistency in dates, both agree that after April 13, 2012, Horton was no longer employed by Shrum.

the trial court to conclude that Horton also violated his placement in community corrections by failing to return to DRC when the purpose of his work pass was complete.

Horton argues that he was still employed by Shrum from April 13 to May 13, 2012 and that Fitzgerald's testimony, in which he denied that Horton continued to work for him during this time, was false and was motivated by Fitzgerald's financial difficulties. As with his claim concerning his change of employment without advance approval, this is an invitation to reweigh the evidence and judge the credibility of the witnesses on appeal, which we will not do on appeal.

### III. Unapproved Job Locations

Lastly, Horton's own testimony indicated that he also violated the conditions of his placement by working at unapproved job locations. Under the conditions of his placement, Horton was not allowed to leave the employer's single and verifiable location without advanced approval. While Horton testified that initially when he was working at Shrum he was working at the same West Washington Street job site as when employed with S&S, he also testified that he worked for Shrum at an off-site job over off I-70 and a painting and tiling job on the "south side of town." Tr. pp. 55-56. Thus, there was sufficient evidence from which the trial court could conclude that Horton also violated these conditions of his placement in community corrections by working at unapproved locations.

### Conclusion

Placement in a community corrections program "is a 'matter of grace' and a 'conditional liberty that is a favor, not a right.'" McQueen, 862 N.E.2d at 1242 (quoting

Cox, 706 N.E.2d at 549). Here, Horton abused the grace that was afforded to him. We find there was sufficient evidence for the trial court to conclude by a preponderance of the evidence that Horton failed to seek advance approval when he started working for a new employer, for working at different, unapproved job locations and that he left on work passes when he was no longer employed by an approved employer. The State proved multiple violations of Horton's placement conditions, and because a violation of a single condition of a community corrections placement is sufficient to support revocation, we need not address Horton's remaining arguments. The evidence was sufficient to support revocation of Horton's community corrections placement.

Affirmed.

KIRSCH, J., and CRONE, J., concur.