## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 15 2017, 8:47 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

John T. Wilson
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

George P. Sherman
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jimmy D. Tanksley, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | December 15, 2017 <br><br> Court of Appeals Case No. 48A05-1703-CR-480 <br><br> Appeal from the Madison Circuit Court <br><br> The Honorable Thomas Newman, Jr., Judge <br><br> Trial Court Cause No. 48C03-1407-FB-1186 |

**Barnes, Judge.**

# Case Summary

Jimmy Duane Tanksley appeals the trial court's revocation of his direct placement in a community transition program ("CTP") and imposition of the remainder of his sentence in the Department of Correction ("DOC"). We affirm.

# Issues

Tanksley raises the following issues on appeal:

    I.      whether the trial court exceeded its authority and denied him due process in revoking his placement in the CTP;

    II.    whether the trial court abused its discretion and denied him due process in revoking his placement; and

    III.   whether Tanksley was subjected to multiple punishments for the same offense in violation of the prohibition against double jeopardy.

# Facts

On March 9, 2015, Tanksley pled guilty to Class C felony battery resulting in serious bodily injury and admitted to being an habitual offender. On April 6, 2015, the trial court imposed an eight-year sentence enhanced by twelve years, for an aggregate sentence of twenty years, all of which was ordered executed in the DOC. The trial court indicated that it would consider sentence modification if Tanksley successfully completed the Purposeful Incarceration Program, a structured program that included drug and alcohol counseling. Tanksley successfully completed the program.

[4] On September 6, 2016, Tanksley filed a motion for modification of his sentence. On October 28, 2016, at the request of the trial court, CTP Coordinator Doug Taylor evaluated Tanksley and deemed him a good candidate for sentence modification. Tanksley told Taylor that: (1) he had "learned about his triggers and how to handle them"; (2) "he feels 'he's got no more chances'"; (3) he "can't go out and do the same thing and get different results"; and (4) his long-term goal was to "stay clean." App. Vol. II pp. 33, 34. On October 31, 2016, after a hearing, the trial court modified Tanksley's sentence and placed him in the CTP. The trial court advised Tanksley of its zero-tolerance policy ("Policy") regarding drug and alcohol violations by offenders whose sentences had been modified from DOC to the CTP. At the outset of Tanskley's CTP placement, Taylor reviewed the CTP's rules prohibiting drug and alcohol use with him, and Tanksley signed an acknowledgment thereof.

[5] Tanksley's residential placement was at a work release center. On December 12, 2016, after a permitted leave, he returned smelling of alcohol. He admitted—verbally and in writing—to drinking whiskey. A urine screen revealed that he had also used methamphetamine, amphetamine, opiates, and morphine. On January 6, 2017, CTP Coordinator Taylor filed a notice of violation with the trial court in which he referenced the application of the Policy as follows: "On all modifications from the IDOC to CTP, Judge Newman has a 'ZERO TOLERANCE POLICY' concerning the use of drugs and/or alcohol." *Id.* at 36. Tanksley was placed in the Madison County correctional complex on December 13, 2016, and received formal notice of the

alleged "violation of suspended executed sentence" on approximately January 26, 2017. *Id.* at 40.

[6] On January 23 and 30, 2017, the trial court conducted a hearing on Tanksley's alleged violation. First, Taylor and Deana Pagnotti testified to the foregoing facts on behalf of the CTP. Next, Tanksley testified that he had been making steady progress before the violation; that the violation was an isolated incident; and that he had accepted responsibility by admitting to the violation.[1] He also denied having prior knowledge of the Policy and argued that the Madison County Community Corrections ("MCCC") had improperly failed to conduct an internal hearing regarding the alleged violation, punishable by a CTP sanction, before involving the trial court. The trial court found that Tanksley had violated the conditions of the CTP, revoked his placement, and imposed his original DOC sentence, stating:

> . . . I was persuaded that Mr. Tanksley would be an appropriate person to put in the community transition program by modification. It's unfortunate that Mr. Tanksley apparently was not really ready to take advantage of the opportunity that he had worked hard to get for himself. He's violated C. T. P. The court modified him to C.T.P., the court now unmodifies him from C. T. P. and orders him to be returned to the Department of Corrections to serve what I would anticipate would be his original sentencing date.

Tr. pp. 46-47. Tanksley now appeals.

---

[1] At the hearing on the violation, Tanksley denied using methamphetamine. Tr. p. 17.

# Analysis

### *I.    Authority*

Tanksley argues that the trial court exceeded its authority and denied him due process in revoking his placement in the CTP.  Probation and community corrections programs serve as alternatives to commitment to the DOC, and both are made at the sole discretion of the trial court.  *McQueen v. State,* 862 N.E.2d 1237, 1242 (Ind. Ct. App. 2007).  Community corrections is "a program consisting of residential and work release, electronic monitoring, day treatment, or day reporting[.]"  Ind. Code § 35-38-2.6-2.  A defendant is not entitled to serve a sentence in either probation or a community corrections program.  *Id.* Rather, placement in either is a "matter of grace" and a "conditional liberty that is a favor, not a right."  *McQueen,* 862 N.E.2d at 1242 (quoting *Cox v. State,* 706 N.E.2d 547, 549 (Ind. 1999)).

The standard of review of an appeal from the revocation of a community corrections placement mirrors that for revocation of probation.  *Id.*  A revocation of community corrections placement is civil in nature, and the State need only prove the alleged violations by a preponderance of the evidence.  *Id.* The due process requirements for probation revocation hearings are more flexible than in a criminal prosecution, "allow[ing] courts to enforce lawful orders, address an offender's personal circumstances, and protect public safety." *Reyes v. State,* 868 N.E.2d 438 (Ind. 2007).  Therefore, we review such revocation decisions under an abuse of discretion standard.  *Prewitt v. State,* 878 N.E.2d 184, 188 (Ind. 2007).

Probation revocation is a two-step process. First, the court must make a factual determination that a violation of a condition of probation actually has occurred. If a violation is proven, then the trial court must determine if the violation warrants revocation of the probation. Indiana has codified the due process requirements at Ind. Code § 35-38-2-3 by requiring that an evidentiary hearing be held on the revocation and providing for confrontation and cross-examination of witnesses and representation by counsel. When a probationer admits to the violations, the procedural due process safeguards and an evidentiary hearing are not necessary. Instead, the court can proceed to the second step of the inquiry and determine whether the violation warrants revocation. In making the determination of whether the violation warrants revocation, the probationer must be given an opportunity to present evidence that explains and mitigates [his] violation.

*Sanders v. State,* 825 N.E.2d 952, 955 (Ind. Ct. App. 2005) (citations omitted), *trans. denied.*

[9] Tanksley argues that he was denied due process of law because an internal disciplinary board of the MCCC did not first conduct an internal hearing to determine whether he should be removed from the CTP before Taylor asked the trial court to revoke his placement; he maintains that the trial court lacked authority to so act.

[10] We initially note that "[t]here is no question that the sentencing court has continuing jurisdiction over a defendant such that it may modify or revoke his probation." *Montgomery v. State,* 58 N.E.3d 279, 282 n.1 (Ind. Ct. App. 2016). Our state legislature has specifically and unequivocally conferred upon trial

courts the authority to revoke a defendant's placement in a community corrections program. Indiana Code Section 35-38-2.6-5(4) provides in part:

> If a person who is placed under this chapter violates the terms of the placement, the community corrections director may do any of the following:
>
> * * * * *
>
> (4) Request that the court revoke the placement and commit the person to the county jail or department of correction for the remainder of the person's sentence. . . .

I.C. § 35-38-2.6-5(4). Due process is satisfied if, during a revocation hearing, the defendant is given "'written notice of the claimed violations, disclosure of the evidence against him, an opportunity to be heard and present evidence, the right to confront and cross-examine adverse witnesses, and a neutral and detached hearing body[.]'" *Isaac v. State,* 605 N.E.2d 144, 148 (Ind. 1992).

[11] Here, Tanksley received written notice of the alleged violations in December 2016; Taylor notified the trial court of the violations on January 6, 2017; and Tanksley was afforded a hearing on January 23 and 30, 2017, wherein he was represented by counsel, confronted and cross-examined witnesses against him, and admitted to prohibited drug and alcohol use.[2] That the trial court, and not

---

[2] As we held in *Sanders*, it is well-settled that where an offender who is facing revocation of a community corrections placement admits to the violation, procedural due process safeguards and an evidentiary hearing are unnecessary, and the trial court may simply proceed to determining whether the violation warrants revocation. 825 N.E.2d at 955. Under cross-examination, Tanksley testified as follows:

an internal board of the MCCC, revoked Tanksley's placement does not constitute denial of due process. *See id.* (affirming trial court's revocation of defendant's community corrections placement and finding no denial of due process where defendant was given notice of alleged violations and an opportunity to be heard and to confront witnesses against him); *see also Madden v. State,* 25 N.E.3d 791, 797 (Ind. Ct. App. 2015) (any argument regarding due process denial based on alleged lack of hearing is negated by the fact a hearing was in fact provided).

[12] Based on the foregoing, the trial court acted within its statutory authority and continuing sentencing jurisdiction when, at the request of the CTP, it revoked Tanksley's placement and reinstituted his remaining DOC sentence for his admitted violation of the Policy. He was not denied due process.

---

Q:      Why did you use [drugs and alcohol]?

A:      Like I said I became complacent. It was a one (1) time thing.

Q:      Isn't it true that you told Mr. Taylor that you thought you could get away with it is that true?

A:      . . . [Y]eah.

Tr. p. 22.

## II.    *Abuse of Discretion*[3]

[13]    Tanksley argues that the trial court abused its discretion in adopting the Policy. Indiana Code Section 11-10-11.5-11.5(b) provides that "if a person violates a CTP rule or any condition established by the sentencing courts," revocation of the offender's placement and imposition of his remaining sentence may occur. Here, Tanksley, who had to complete drug and alcohol counseling in the Purposeful Incarceration Program before the trial court would even consider modifying his sentence, was well aware of the prohibition on drug and alcohol use by CTP participants. At the hearing on the motion to revoke Tanskley's placement, Taylor testified as follows:

> A:    . . . [A]t the modification hearing Judge Newman umm . . . indicates to the offender that he has a zero (0) tolerance policy, that's for the use of drugs or alcohol during the program and that would mean that we would report back to Judge Newman if there was a situation where that has been violated. Normally since the offender basically still considered department property of the Department of Corrections since they're finishing DOC time, we would not involve the judge's [sic] on just a regular C. T. P. situation but Judge Newman did specify that these offenders that are being modified are zero (0) tolerance

---

[3] Tanksley also contends that the trial court abused its discretion in imposing such a harsh sentence, particularly given the progress he made before the violations. Trial courts are not required to balance "aggravating or mitigating circumstances when imposing sentence in a probation revocation proceeding." *Treece v. State,* 10 N.E.3d 52, 59-60 (Ind. Ct. App. 2014) (citing *Mitchell v. State,* 619 N.E.2d 961, 964 (Ind. Ct. App. 1993)), overruled in part by *Patterson v. State,* 659 N.E.2d 220, 223 n.2 (Ind. Ct. App. 1995). Moreover, violation of a single condition of placement is sufficient to revoke placement. *Gosha v. State,* 873 N.E.2d 660, 663 (Ind. Ct. App. 2007).

have a zero (0) tolerance policy for the use of drugs and alcohol.

Q:    And were you at that modification hearing?

A:    Yes.

Q:    And so it's your position that the client's [sic], your participants are told in court that day there's a zero (0) tolerance?

A:    Yes.

Tr. p. 31. Taylor also testified that he had personally reviewed the CTP's "rules about the use of drugs and alcohol" with Tanksley, who signed an acknowledgment of the same. *Id.*

[14]    Despite being granted a modification to CTP over the prosecution's objection, Tanksley used methamphetamine, amphetamine, opiates, morphine, and whiskey while he was on a permitted leave from work release. We regard the trial court's Policy as an exercise of its continuing sentencing discretion to "modify or revoke" a CTP placement. *See Montgomery,* 58 N.E.3d at 282 n.1. Tanksley understood the extent to which the trial court had shown him grace, but failed to honor it. *See McQueen,* 862 N.E.2d at 1242. We find no abuse of discretion or denial of due process from the revocation of Tanksley's CTP placement and imposition of the remaining balance of his DOC sentence. *See Gosha,* 873 N.E.2d at 663 (violation of a single condition of placement is sufficient to revoke placement).

### *III.  Double Jeopardy*

Tanksley argues that he was "subjected to multiple punishments for the same offense in violation of the prohibition against double jeopardy."  Appellant's Br. at p. 15.  "[A] violation of a condition of community corrections does not constitute an offense within the purview of double jeopardy analysis." *McQueen,* 862 N.E.2d at 1244.  "Double jeopardy protection applies only to criminal proceedings, and revocation of community corrections placement proceedings are not criminal proceedings because violations must be proven only by a preponderance of the evidence." *Id.*  For these reasons, Tanksley cannot establish a double jeopardy violation here.

## Conclusion

Tanksley was given a hearing that comported with due process.  The trial court did not exceed its authority or abuse its discretion in revoking his direct placement in the CTP.  Tanksley also cannot establish a double jeopardy violation under the circumstances.  We affirm.

Affirmed.

Najam, J., and Mathias, J., concur.