## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 10 2018, 10:29 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Andrew R. Falk
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Henry A. Flores, Jr.
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Cynthia S. Gordon,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | May 10, 2018<br><br>Court of Appeals Case No.<br>32A01-1711-CR-2597<br><br>Appeal from the Hendricks Circuit Court<br><br>The Honorable Daniel F. Zielinski, Judge<br><br>Trial Court Cause No.<br>32C01-1502-FA-4 |

**Crone, Judge.**

## Case Summary

Cynthia S. Gordon appeals the trial court's revocation of her placement in work release. She contends that the trial court abused its discretion in revoking her placement and that the court violated her due process rights in failing to provide a clear statement of the reasons for revocation. Finding no abuse of discretion and no due process violation, we affirm.

## Facts and Procedural History

In February 2015, Gordon was charged with level 6 felony theft, level 6 felony assisting a criminal, and level 4 felony burglary. She subsequently pled guilty to level 4 felony burglary in exchange for dismissal of the other charges. Pursuant to the plea agreement, on October 26, 2015, the trial court sentenced Gordon to 2190 days, with 730 days suspended, and 1449 1/3 days to be served on work release.

In August 2017, Gordon fell in the bathroom at the work release facility and broke her pelvis. Thereafter, on August 17, 2017, the director of the work release facility filed a petition and notice of work release violation. The notice requested a change of placement for Gordon based on the following:

> 1. On 8/17/17, Ms. Gordon went to the doctor and returned to the facility with a note that stated that she needs to be placed on bed rest and have access to a wheelchair when up and about. They specifically said that she is to rarely be on crutches and suggested that she be home for at least the first month to aid in the healing process. The expected healing period is 3-6 months.

2. Because medical care is not provided in the facility and her doctor has given such strict guidelines, she is no longer a viable candidate for the program.

Appellant's App. Vol. 2. at 59.[1] The probable cause affidavit that accompanied the notice also alleged that on three prior occasions Gordon had violated the conditions of work release as follows:

1. On 12/14/15, Ms. Gordon was written up and sanctioned by the Conduct Adjustment Board due to testing positive for Buprenorphine and Nor-Buprenorphine without a valid prescription on 12/1/15. Good time credit in the amount of 30 days/22 actual were revoked due to being convicted of a level 4 felony.

2. On 6/25/16, Ms. Gordon was written up and sanctioned by the Conduct Adjustment Board due to a failure to follow medication procedures. She had 30 good time/22 actual days revoked.

3. On 8/5/17, Ms. Gordon was written up and sanctioned by the Conduct Adjustment Board for being terminated from employment for disciplinary reasons. She was sanctioned a loss of 60/45 actual good time credit days.

*Id*. at 60. Accordingly, the notice requested Gordon's removal from the work release facility based on her possession or consumption of illegal drugs without a prescription, her failure to follow medication procedures, her termination

---

[1] While Gordon's medical restrictions could serve as a basis for a change of her placement, her medical restrictions do not constitute a "violation" of probation or the conditions of placement and should never have been characterized as such by the work release director, the State, or the trial court.

from employment for disciplinary reasons, and her current medical restrictions. Some preliminary hearings were held, and Gordon did not return to the work release facility but was placed on temporary home detention, over the State's objection, until the revocation hearing.

[4] A revocation hearing was held on October 5, 2017. During the hearing, the director of the work release program, Bridgett Collins, testified regarding Gordon's injury as well as her prior violations. Collins stated that Gordon has "had a few write ups" during her time in work release and that "she doesn't accept responsibility for her actions." Tr. Vol. 2 at 26. Collins explained that "right before [Gordon] was hurt" and needed to be removed from the program for medical issues, "she was already on the verge of being removed from the program" based on her prior "discipline issues." *Id*. Collins gave specifics about Gordon's December 2015 violation, her June 2016 violation, and her August 2017 violation of the conditions of work release. Collins indicated that Gordon's use and misuse of medications was especially problematic because the work release facility is "filled with addicts" and individuals like Gordon are "triggers" for others. *Id*. at 28, 31. Collins stated that about a week after Gordon was terminated from her employment for disciplinary reasons, she was injured and needed a wheelchair and to be on bed rest. Collins explained that Gordon's medical issues were "beyond" what the facility can handle. *Id*. at 30.

[5] Gordon stated that her injury had now healed and requested that she be allowed to continue in the work release program or that she be placed on home detention. At the conclusion of the hearing, the trial court stated,

The evidence shows that the defendant has had at least three violations, she's not a candidate for work release or home detention, she violates. She agreed in her plea that she would serve her time either on work release or the department of corrections. She's not a candidate for work release. She's not fine, she won't be a burden, I'm going to sentence her to the Indiana Department of Corrections for one thousand four hundred forty-nine days, give credit for seven hundred and twelve plus one hundred and sixteen.

*Id*. at 45. This appeal ensued.

# Discussion and Decision

## Section 1 – The trial court did not abuse its discretion in revoking Gordon's work release placement.

Gordon asserts that the trial court abused its discretion in revoking her work release placement. We treat a hearing on a petition to revoke a placement in a community corrections program the same as we do a hearing on a petition to revoke probation. *Cox v. State*, 706 N.E.2d 547, 549 (Ind. 1999). "A defendant is not entitled to serve a sentence in either probation or a community corrections program." *Id*. "Rather, placement in either is a 'matter of grace' and a 'conditional liberty that is a favor, not a right.'" *Id*. (quoting *Million v. State*, 646 N.E.2d 998, 1002 (Ind. Ct. App. 1995)).

"Our standard of review of an appeal from the revocation of a community corrections placement mirrors that for revocation of probation." *Monroe v. State*, 899 N.E.2d 688, 691 (Ind. Ct. App. 2009). A revocation hearing is civil in nature and the State need only prove an alleged violation by a preponderance of

the evidence. *Id.* We will consider all the evidence supporting the judgment of the trial court without reweighing that evidence or judging the credibility of the witnesses. *Id.* If there is substantial evidence of probative value to support the trial court's conclusion that a defendant has violated any terms of probation or community corrections placement, we will affirm the court's decision to revoke. *Id.*

[8] Gordon argues that the State's "primary reason" for seeking revocation of her work release placement, her pelvic injury and required medical care, had been resolved at the time of the revocation hearing. Appellant's Br. at 10. Thus, she argues, revocation of her placement was no longer necessary and the trial court abused its discretion in doing so. However, as Collins's testimony and the probable cause affidavit attached to the petition to revoke made clear, Gordon had already violated the conditions of her placement on three prior occasions. It is well settled that the violation of a single condition of probation is sufficient to revoke probation. *Heaton v. State*, 984 N.E.2d 614, 616 (Ind. 2013). Accordingly, it was reasonable for the trial court here to determine that revocation of Gordon's work release placement was warranted based on the substantial evidence of her three prior violations.

[9] To the extent that the trial court also relied on Gordon's medical restrictions as one of the reasons for revocation of placement (oral reference to Gordon not being "fine" and stating that she "won't be burden" to the work release facility, and abstract of judgment listing medical restrictions as reason for revocation), this was error, as the evidence supports Gordon's assertion that she is no longer

medically restricted. However, any such error was harmless in light of the clear evidence of her three prior violations. *See Hubbard v. State*, 683 N.E.2d 618, 622 (Ind. Ct. App. 1997) (probationer not harmed by trial court's error in light of evidence of multiple probation violations). The trial court did not abuse its discretion in revoking Gordon's work release placement.[2]

## Section 2 – The trial court did not violate Gordon's due process rights.

[10] Gordon next asserts that the trial court violated her due process rights by failing to issue a sufficient statement explaining the reasons for revocation. One requirement of due process provided to a probationer at a revocation hearing includes a written statement by the factfinder as to the evidence relied on and reasons for revoking probation. *Parker v. State*, 676 N.E.2d 1083, 1085 (Ind. Ct. App. 1997) (citing *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972)). "Due Process requires that the reasons for revoking probation be clearly and plainly stated by the sentencing judge not merely to give appellant notice of the revocation, but also to facilitate meaningful appellate review." *Medicus v. State*, 664 N.E.2d 1163, 1164 (Ind. 1996). Stated another way, "the purposes of the written statement requirement are to help '[e]nsure accurate factfinding with respect to

---

[2] Gordon suggests a double jeopardy issue by stating that she has "already been punished" by the work release facility for her prior violations. Appellant's Br. at 14. We note that "a violation of a condition of community corrections does not constitute an offense within the purview of double jeopardy analysis." *McQueen v. State*, 862 N.E.2d 1237, 1242 (Ind. Ct. App. 2007). Indeed, "[d]ouble jeopardy protection applies only to criminal proceedings, and revocation of community corrections placement proceedings are not criminal proceedings…." *Id*. at 1244. Thus, regardless of the disciplinary actions taken by the work release facility, the trial court retained the authority to revoke her placement and to revise her sentence accordingly.

any alleged violation' and to provide 'an adequate basis for review to determine if the decision rests on permissible grounds supported by the evidence.'" *Id.* (quoting *Black v. Romano*, 471 U.S. 606, 613-14 (1985)).

[11] Gordon argues that neither the trial court's written order nor its oral statement during the revocation hearing provide its specific reasons for revoking her work release placement, and thus her due process rights were violated. However, when the court's oral and written statements are considered along with the hearing transcript, they indicate that the trial court revoked Gordon's placement for both valid and invalid reasons. This is sufficient for due process purposes. Specifically, the trial court stated at the conclusion of the revocation hearing that it was revoking placement because Gordon "has at least three violations," clearly referring to the violations alleged in the probable cause affidavit, which included: (1) possession/consumption of illegal drugs without a prescription; (2) failure to follow medication procedures; and (3) termination from employment for disciplinary reasons. Tr. Vol. 2 at 45. Additionally, as noted above, the trial court improperly relied on Gordon's medical restrictions in revoking her placement, as the abstract of judgment listed only medical restrictions as the reason for revocation.

[12] Under the circumstances, we conclude that the trial court's written order and its oral statement, when coupled with the hearing transcript, satisfy the writing requirement, as they clearly indicate the court's reasons (both valid and invalid) for revoking Gordon's probation and serve the purpose of facilitating and ensuring meaningful appellate review. *See Hubbard v. State*, 683 N.E.2d 618,

621 (Ind. Ct. App. 1997) (trial court's written revocation order, which provided reasons for revocation, and hearing transcript, which provided evidence underlying revocation, "provide[d] an adequate basis for appellate review" and were "adequate to satisfy the separate writing requirement."); *Wilson v. State*, 708 N.E.2d 32, 33 (Ind. Ct. App. 1999) (trial court's oral hearing statement in which court found that "State has met its burden of proof and [f]ound the defendant had violated the terms and conditions of his probation as alleged in Item 3A, 3B, 3C, D, E, and F and G" met the written statement requirement and did not violate probationer's due process rights); *Clark v. State*, 580 N.E.2d 708, 711 (Ind. Ct. App. 1991) (holding that trial judge's oral statement from bench stating reasons for revocation that was later reduced to writing in hearing transcript satisfied due process). Thus, the trial court did not violate Gordon's due process rights.[3] The trial court's revocation of Gordon's work release placement is affirmed.

[13]     Affirmed.


Bailey, J., and Brown, J., concur.

---

[3] We do suggest that it is prudent for a trial court to issue a detailed written order regarding its reasons for revocation, as obviously some hearing transcripts may not provide us an adequate basis for meaningful appellate review.