## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 23 2019, 7:14 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

David W. Stone, IV
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tiffany A. McCoy
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Paul J. Coy, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | August 23, 2019 <br><br> Court of Appeals Case No. <br> 19A-CR-700 <br><br> Appeal from the Madison Circuit Court <br><br> The Honorable David A. Happe, Judge <br><br> Trial Court Cause No. <br> 48C04-1610-F6-2212 |

**Pyle, Judge.**

# Statement of the Case

Paul J. Coy ("Coy") appeals the revocation of his community corrections placement. He argues that the trial court abused its discretion by revoking his community corrections placement and ordering him to serve the remainder of his sentence at the Indiana Department of Correction. Concluding that there was no abuse of discretion, we affirm the trial court's judgment.

Affirmed.

# Issues

1. Whether the trial court abused its discretion by revoking Coy's community corrections placement.

2. Whether the trial court abused its discretion by ordering Coy to serve the remainder of his sentence in the Indiana Department of Correction.

# Facts

In October 2016, the State charged Coy with Level 6 felony residential entry, Class A misdemeanor resisting law enforcement, and Class A misdemeanor invasion of privacy in this cause 48C04-1610-F6-2212 ("underlying cause"). The victim of the residential entry and invasion of privacy in this underlying cause was Coy's ex-girlfriend, Rose Baker ("Baker"). At the time of the alleged offenses in this underlying cause, Coy was on parole from his 2012 convictions for Class C felony reckless homicide and two counts of Class D felony criminal

recklessness inflicting serious bodily injury in cause 48C03-1206-FC-1116 ("reckless homicide cause"). [1]

[4] In February 2017, Coy entered a plea agreement in this underlying cause and pled guilty as charged in exchange for the State's recommendation that his sentence would be "open to the court with any executed portion capped at 30 months and placement limited to COS." (App. Vol. 2 at 30). The trial court imposed a thirty (30) month sentence for Coy's Level 6 felony residential entry conviction, a twelve (12) month sentence for his Class A misdemeanor resisting law enforcement conviction, and a twelve (12) month sentence for his Class A misdemeanor invasion of privacy conviction. The trial court ordered these three sentences to be served concurrently to each other but consecutively to his parole sanction in his reckless homicide cause. The trial court "granted community corrections" and ordered Coy to serve the thirty-month sentence from this underlying cause in the Continuum of Sanctions ("COS") program through the Community Justice Center. (App. Vol. 2 at 5). Additionally, the trial court ordered Coy to have no contact with Baker.

[5] On December 16, 2018, was released from the Indiana Department of Correction from his parole sanction in his reckless homicide cause and was to begin serving his sentence from this underlying cause in the COS program. Coy was required to report to the Community Justice Center for the COS program

---

[1] Coy was released on parole in his reckless homicide cause in July 2016.

within forty-eight hours of his release, but he failed to do so. In fact, Coy never reported at all.

[6] That same day, Coy went to Baker's house. Coy told Baker that the protective order she had had against him had been "dropped." (Tr. 19). Baker, with Coy still at her house, called and found out that the protective order was still in effect. She then told him to leave her house.

[7] On December 29, 2018, despite the no-contact order, Coy went back to Baker's house. Baker's eleven-year-old daughter ("Baker's daughter") answered the door. Coy "shoved down" Baker's daughter and entered the house without permission. (Tr. 20). He went back to Baker's room and cursed at her. Baker called the police. When Anderson Police Officer Andrew Lanane ("Officer Lanane") responded to the scene, he verified that there was a protective order in place for the protection of Baker from Coy. He also took a statement from Baker and her daughter.

[8] In January 2019, the State filed a petition to terminate Coy's community corrections placement, alleging that Coy had violated the conditions of the COS program by: (1) committing the new criminal offenses, including Level 4 felony burglary, Level 5 felony battery of a child under fourteen years of age, Level 6 felony residential entry, and Level 6 felony invasion of privacy; and (2) failing to report to the Community Justice Center to serve his sentence from this underlying cause in the COS program.

[9] In February 2019, the trial court held a revocation hearing. During the hearing, the State presented testimony from Officer Lanane, Baker, and the coordinator for the COS program ("COS Coordinator") at the Community Justice Center. Officer Lanane testified that there was a protective order in place on December 29 when Coy went to Baker's house. The officer also testified that when he took a statement from Baker's daughter at the scene, she told him that Coy had gone into the house without permission, pushed her down, walked to the back of the house, and cursed out Baker. Immediately thereafter, Coy objected to the officer's testimony based on hearsay. The trial court ultimately determined that there was an "adequate showing of reliability" and ruled that it would allow the testimony. (Tr. 10). During Baker's testimony, she was asked when she was first aware that Coy was in her house on December 29, and she testified—without objection—that she "didn't know he was there until after [her] daughter had got[ten] shoved down and then he c[a]me to her room[.]" (Tr. 20). Baker also testified that Coy had entered her house without permission. The COS Coordinator testified that Coy was supposed to report to the COS program within forty-eight hours of his release from the Indiana Department of Correction on December 16, 2018 but that he never reported. When Coy testified, he acknowledged that he was aware that he was supposed to report to the COS program upon his release from prison. Coy also acknowledged that he knew that there was a protective order in place when he went to Baker's house on December 29.

The trial court determined that Coy had violated the conditions of his community corrections placement as alleged. The trial court revoked Coy's community corrections placement in the COS program and ordered him to serve the remaining portion of his sentence, 686 days, in the Indiana Department of Correction. Coy now appeals.

# Decision

Coy argues that the trial court abused its discretion by: (1) revoking his community corrections placement; and (2) ordering him to serve his remaining sentence at the Indiana Department of Correction. We will address each argument in turn.

## 1. Revocation of Probation

Coy challenges the trial court's determination that he violated the terms of his community corrections placement by committing the new offenses of burglary and battery.

We review a trial court's ruling on a petition to revoke a defendant's placement in a community corrections program the same as we do for a ruling on petition to revoke probation. *Cox v. State*, 706 N.E.2d 547, 549 (Ind. 1999), *reh'g denied*. "A defendant is not entitled to serve a sentence in either probation or a community corrections program." *Id.* "Rather, placement in either is a matter of grace and a conditional liberty that is a favor, not a right. *Id.* (citations and internal quotation marks omitted). A hearing on a petition to revoke placement in a community corrections program is civil in nature, and "the State need only

prove the alleged violations by a preponderance of the evidence." *Id.* "We will consider all the evidence most favorable to supporting the judgment of the trial court without reweighing that evidence or judging the credibility of witnesses." *Id.* "If there is substantial evidence of probative value to support the trial court's conclusion that a defendant has violated any terms of probation, we will affirm its decision to revoke probation." *Id.* The violation of a single condition of probation is enough to support a revocation. *Hubbard v. State,* 683 N.E.2d 618, 622 (Ind. Ct. App. 1997).

[14] Here, the trial court determined that Coy had violated the terms of his community corrections placement as alleged in the petition to revoke, which included allegations that Coy had: (1) committed new criminal offenses, including burglary, battery, residential entry, and invasion of privacy; and (2) failed to report to the Community Justice Center to serve his sentence from this underlying cause in the COS program.

[15] Coy, however, challenges the trial court's determination on only two of the violations. Specifically, he contends that "[t]he finding of violation for the commission of battery and burglary are not supported by substantially reliable or trustworthy hearsay" evidence as required under *Reyes v. State*, 868 N.E.2d 438, 440 (Ind. 2007), *reh'g denied*. (Coy's Br. 14). Coy contends that Officer Lanane's testimony about what Baker's daughter had told him at the scene was not substantially trustworthy under *Reyes* and was the only evidence upon which the trial court could have found that he had committed the new offenses of battery and burglary.

[16] We, however, need not determine if the challenged evidence was substantially trustworthy under *Reyes*. Even if we were to decide that the evidence had been erroneously admitted, any such error would constitute harmless error. *See, e.g.*, *Figures v. State,* 920 N.E.2d 267, 273 (Ind. Ct. App. 2010) (explaining that admission of evidence in a probation revocation hearing is harmless error if there are independent grounds for a court to revoke probation). Aside from the officer's challenged testimony, the State presented testimony that Coy went to Baker's house knowing that she had a protective order against him, that he entered her house without permission, and that he failed to report as required to the Community Justice Center to serve his sentence for this underlying cause in the COS program. Because there was evidence sufficient to show that Coy had violated the terms of his community corrections placement, we affirm the trial court's revocation of that placement. *See Hubbard,* 683 N.E.2d at 622 (explaining that a single probation violation was sufficient to revoke probation).

## 2. Order to Serve Remainder of Sentence in Prison

[17] Coy also argues that the trial court abused its discretion by ordering him to serve his remaining sentence at the Indiana Department of Correction.

[18] Placement in community corrections is at the sole discretion of the trial court. *Toomey v. State*, 887 N.E.2d 122, 124 (Ind. Ct. App. 2008). A trial court "may, at the time of sentencing, suspend the sentence and order a person to be placed in a community corrections program as an alternative to the department of correction." IND. CODE § 35-38-2.6-3(a). Upon determining that a defendant

has violated a term of his community corrections, the trial court may "revoke the placement and commit the person to the . . . department of correction for the remainder of the person's sentence." *See* IND. CODE § 35-38-2.6-3. We review a trial court's decision in a community corrections proceeding for an abuse of discretion. *McQueen v. State*, 862 N.E.2d 1237, 1242 (Ind. Ct. App. 2007). An abuse of discretion occurs where the decision is clearly against the logic and effect of the facts and circumstances. *Prewitt v. State*, 878 N.E.2d 184, 188 (Ind. 2007).

[19]     The record reveals that the trial court had ample basis for its decision to order Coy to serve his remaining sentence at the Indiana Department of Correction. In this underlying cause, Coy was convicted of, among other things, Level 6 felony residential entry and Class A misdemeanor invasion of privacy for breaking into Baker's home and violating a no contact order. Coy, who was on parole at the time he committed those offenses, was already shown tremendous leniency with his plea agreement in this underlying cause that allowed him to serve his entire sentence on community corrections in the COS program. He, however, squandered this opportunity. Within mere weeks of being released from incarceration from his parole sanction in his reckless homicide cause, Coy—knowing that there was a no contact order in place against him—went without permission into Baker's house. Equally egregious, Coy failed to report as required to the Community Justice Center to begin his sentence from this underlying cause in the COS program. As the trial court aptly noted when revoking Coy's community corrections placement and ordering him to serve his

remaining sentence in the Indiana Department of Correction, "it's pretty clear . . . that Mr. Coy really has no interest in trying to do anything in the community" and "he doesn't have any interest in following Court orders[.]" (Tr. 55). Based on the record before us, we conclude that the trial court did not abuse its discretion by revoking Coy's community corrections placement and ordering him to serve the remainder of his sentence at the Indiana Department of Correction. Accordingly, we affirm the trial court's judgment.

[20] Affirmed.

Robb, J., and Mathias, J., concur.