## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 29 2019, 9:17 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Daniel Hageman
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jabara Kinchen,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

April 29, 2019

Court of Appeals Case No.
18A-CR-2532

Appeal from the Marion Superior Court

The Honorable Sheila A. Carlisle, Judge

The Honorable Stanley Kroh, Magistrate

Trial Court Cause No.
49G03-1702-F4-5507

**Altice, Judge.**

[1] After Jabara Kinchen violated the rules of his work release program, the trial court revoked his placement and ordered Kinchen to serve the remainder of his previously-suspended four-year sentence at the Indiana Department of Correction (DOC). Kinchen appeals and asserts that the trial court abused its discretion when it determined that his violations warranted revocation of his community corrections placement.

[2] We affirm.

## Facts & Procedural History

[3] On February 8, 2017, City of Lawrence police responded to a residential burglary in progress. On February 10, 2017, the State charged Kinchen with Level 4 felony burglary, Level 6 felony theft, and Level 6 felony theft of a firearm. On May 10, 2017, Kinchen, age eighteen, entered into a plea agreement with the State pleading guilty to Level 4 felony burglary in exchange for an agreed sentence and dismissal of the remaining charges. The plea agreement called for a sentence of seven years, with four years executed and three years suspended, and two years of probation. The four years of executed time was to be served through Marion County Community Corrections (MCCC). On June 2, 2017, the trial court approved the plea agreement and sentenced Kinchen accordingly, and Kinchen was committed to MCCC. Pursuant to MCCC's recommendation, Kinchen began serving his four-year executed sentence on home detention with GPS.

On November 22, 2017, MCCC filed a Notice of Community Corrections Violation, alleging nine violations of conditions of MCCC. On December 8, 2017, Kinchen admitted to violating conditions of community corrections by testing positive for THC, leaving his residence without authorization, failing to comply with MCCC rules and regulations, failing to maintain contact with MCCC, and failing to comply with his monetary obligations. The parties entered into an agreed entry on the violation, and the trial court ordered Kinchen to serve 100 days in jail after which he would return to community corrections monitoring.

On March 26, 2018, MCCC filed a Notice of Community Corrections Violation, alleging that MCCC received an alert of "device communication loss" such that Kinchen's GPS was not providing his location, such that his whereabouts were unknown, he failed to maintain contact with MCCC, and failed to comply with his monetary obligations. *Appellant's Appendix Vol. II* at 105. At an April 20, 2018 hearing, the violation was withdrawn and Kinchen was returned to MCCC.

On April 24, 2018, MCCC filed a Notice of Community Corrections Violation, alleging that on April 21 MCCC received an alert that Kinchen's GPS device was not sending a proper signal but was in motion, "possibly due to the device being compromised," and his whereabouts were unknown for about five hours. *Id.* at 115. The notice also alleged that on April 22 Kinchen left home without authorization for about four hours and also failed to comply with monetary obligations. At a June 8, 2018 hearing, Kinchen admitted to violating MCCC

rules and regulations, and, pursuant to an agreed entry, the trial court modified his placement to work release.

[7] On August 3, 2018, MCCC filed a Notice of Community Corrections Violation, alleging that on July 29 and 31 Kinchen failed to comply with the rules and regulations of Duvall Residential Center (Duvall) regarding conditions of temporary leave and failed to comply with his monetary obligations. At the September 21, 2018 contested hearing, case manager Bruce Henry testified that at Duvall he supervises residents, including Kinchen, and that as a case manager his duties included holding meetings, sending residents for drug testing, making programming referrals, and addressing issues of misconduct. He stated that all residents are required to watch a video and go through an initial orientation in which the facility's rules are explained to the residents and the residents sign an acknowledgement of the rules. Henry testified that residents are not free to leave the facility unless certain conditions are met, and even when those conditions are met, leaving the facility requires prior notice and approval from the case manager. Residents were permitted to travel to and from approved locations by bus, walk, or obtaining a ride from someone, but if the latter, the driver has to be approved in advance by the case manager and has to submit proof of a driver's license and proof of insurance. Henry explained that residents check in and check out through a control center, and the center notes the times and dates, allowing the case managers to monitor absences.

[8]    Henry stated that he discussed the rules of the facility with Kinchen "multiple times," including the rules for temporary leave in order to go to work. *Transcript Vol. 2* at 9.  Henry testified that he told Kinchen that "when on an approved pass" he could only go to the approved location and needed to return on time.  *Id.* at 10.  Henry testified that Kinchen was approved to leave the facility on July 29, 2017 from 10:00 a.m. to 8:00 p.m. to go to work at Goodwill from 12:00 p.m. to 6:00 p.m.   Kinchen was permitted to travel to work by bus. Kinchen returned to Duvall at 9:16 p.m.  Henry testified that Kinchen was similarly approved to leave Duvall on July 31 from 12:45 p.m. to 10:00 p.m. to go to work at Goodwill by bus.  Kinchen returned at 11:55 p.m.  Henry did not give Kinchen permission to stop at any other locations on either July 29 or 31.

[9]    Duvall employee Patty Montgomery testified that she contacted Goodwill regarding Kinchen's work shifts on July 29 and 31 and was advised that he left work at 6:00 p.m. on July 29 and 9:00 p.m. on July 31.  Tia Stanford, a Duvall shift supervisor, testified that, on the evening of July 31, she stopped at the Steak & Lemonade restaurant to get dinner before work, and she saw Kinchen walk into the restaurant.  She observed him arrive in a car, exit it, and walk inside with a woman.  Stanford recalled that she smelled the odor of marijuana when Kinchen and the woman walked up to the counter where she was standing.  Stanford returned to Duvall and shared with coworkers that she had seen him at the restaurant, and she testified that upon Kinchen's return to Duvall the other shift supervisor with her agreed "that yeah, he did smell like the aroma of marijuana."  *Id.* at 31.

[10] Kinchen testified that, to travel to his job at Goodwill, he had to take two busses and walk a mile, and that because of this commute, Henry approved employment passes allotting two hours to travel to work and two hours to return. Kinchen acknowledged that on July 29 he did not return to Duvall on time, stating that he missed a bus. He also acknowledged that he returned late to Duvall on July 31. Kinchen denied both that he was in a vehicle and that he was at the Steak & Lemonade restaurant on July 31, 2018.

[11] The trial court found that Kinchen had violated MCCC conditions regarding his temporary leave passes for work, revoked his placement on community corrections, and ordered that he serve the remainder of his four-year executed sentence at the DOC. In doing so, the trial court told Kinchen, "If this was the first violation, the Court very likely would be returning you to Community Corrections," but this was a fourth violation and Kinchen had accrued a "pattern of violations." *Id.* at 49. Kinchen now appeals.

## Discussion & Decision

[12] Placement on probation or in a community corrections program is a matter of grace and not a right. *Cox v. State*, 706 N.E.2d 547, 549 (Ind. 1999); *Treece v. State*, 10 N.E.3d 52, 56 (Ind. Ct. App. 2014), *trans. denied*. Probation revocation is a two-step process. *Woods v. State*, 892 N.E.2d 637, 640 (Ind. 2008). First, the court must make a factual determination that a violation of a condition of probation actually occurred. *Id.* Second, if a violation is proven, then the trial court must determine if the violation warrants revocation of the probation. *Id.*

[13] If a defendant violates the terms of his placement in community corrections, the court may: (1) change the terms of the placement; (2) continue the placement; (3) revoke the placement and commit the person to the DOC for the remainder of the person's sentence. Ind. Code §35-38-2.6-5; *Toomey v. State*, 887 N.E.2d 122, 124 (Ind. Ct. App. 2008). We review a trial court's sentencing decision in a probation revocation proceeding for an abuse of discretion. *Sanders v. State*, 825 N.E.2d 952, 957 (Ind. Ct. App. 2005), *trans. denied*. We consider only the evidence most favorable to the judgment and do not reweigh the evidence or judge the credibility of the witnesses. *Id*. at 954-55.

[14] In arguing that that the trial court abused its discretion in revoking his placement in community corrections, Kinchen highlights that "while serving his sentence on community corrections, Kinchen had not been charged with a new criminal offense" and urges that sending him to the DOC "did not serve the purpose of reformation mandated by Article 1 § 18 of our Indiana Constitution" because revocation caused him to lose his Goodwill job and, per Indiana's risk assessment system, unemployment increases likelihood of reoffending. *Appellant's Brief* at 6, 8. We are unpersuaded by his arguments, and find no abuse of discretion in the trial court's decision to revoke MCCC placement and order Kinchen to serve the remainder of his sentence at the DOC.

[15] Here, as the State observes, the current violations need not be considered "as if they existed in a vacuum." *Appellee's Brief* at 12. Indeed, this was the fourth Notice of Violation that MCCC had filed since Kinchen's placement in June

2017.[1] By the time of the filing of the current violations, Kinchen had already admitted to and accumulated a number of other violations. Other than one 100-day term in jail, Kinchen had been given the grace of continued placement in MCCC. The trial court did not abuse its discretion when it revoked his placement and ordered him to serve the remainder of his executed sentence at the DOC.

[16]     Judgment affirmed.

Kirsch, J. and Vaidik, C.J., concur.

---

[1] We recognize that for each of the four times that MCCC filed a Notice of Community Corrections Violation, the State filed a corresponding Notice of Probation Violation.